

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-13-00081-CR

Juan **RODRIGUEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR10368
Honorable Angus K. McGinty, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Marialyn Barnard, Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  July 2, 2014

AFFIRMED

On May 17, 2012, Appellant Juan Rodriguez was found guilty of multiple counts of aggravated sexual assault and indecency with V.R., a child.  The trial court subsequently found the State's enhancement allegation to be true and Rodriguez was sentenced to thirty-years confinement in the Institutional Division of the Texas Department of Criminal Justice and assessed a fine in the amount of $10,000.00.  Rodriguez raises several issues on appeal.  We affirm the trial court's judgment.

**FACTUAL BACKGROUND**

Rodriguez was charged in an eight-count indictment, alleging aggravated sexual assault of a child and indecency with a child.

The State called several witnesses at trial. We will discuss the testimony in the order the witnesses were presented at trial. The complaints raised by Rodriguez on appeal require this court to include the specific and detailed allegations of abuse as set forth in the trial testimony.

**A.      Witnesses at Trial**

*1.      Leilani, V.R.'s mother*

The State's first witness, Leilani, is V.R.'s mother and was Rodriguez's girlfriend during the period of the alleged incidents. Leilani testified that she and Rodriguez were "on-again, off-again" between 2003 and 2006, but began living together continuously in 2006. In 2009, V.R., then fourteen-years old, told her that Rodriguez was sexually assaulting her. Leilani testified, in detail, regarding the alleged assaults as reported by V.R. Leilani further testified that after V.R. told her about the abuse, Leilani physically "examined" V.R. and then confronted Rodriguez. According to Leilani, Rodriguez attempted to stab himself with a syringe and threatened to kill himself with a knife. It was only after he left the residence that Leilani called the police.

During cross-examination, defense counsel garnered testimony about previous problems with V.R., specifically allegations of inappropriate sexual contact V.R. had with other children at her elementary school and V.R. running away to stay with a boyfriend, some three years prior to her outcry. Leilani also testified about her disciplining V.R., including slapping V.R. so hard her lip burst and cutting V.R.'s hair as punishment. During questioning, Leilani attempted to correlate V.R.'s behavior with Rodriguez's alleged abuse, but ultimately conceded that it was not until years later that V.R. reported her behavior in 2006 was a result of Rodriguez's abuse.

### 2. C.R., V.R.'s Younger Sister

C.R., who was twelve-years old at the time of V.R.'s outcry, testified that she heard V.R. crying in the bathroom. After asking V.R. several times what happened, V.R. finally stated that Rodriguez was touching her. C.R. explained she was scared and told her older sister, A.R., that same night. When Leilani asked why V.R. was crying, C.R. testified that A.R. lied and told Leilani that she had hit V.R. in the nose. C.R. claimed they did not immediately tell Leilani what V.R. said because Rodriguez was there, but that eventually V.R. told Leilani everything. On cross-examination, C.R. acknowledged that she did not like Rodriguez because he was too strict and that on one occasion, she even spit in his food.

### 3. A.R., V.R.'s Older Sister

The State next called A.R., who was fifteen-years old at the time. A.R. testified that C.R. came into her room and told her V.R. was crying and that Rodriguez had touched her. A.R. called V.R. into her bedroom and confirmed what V.R. had told C.R., but decided not to tell her mother until the following day. On cross-examination, A.R. testified that she also learned years later that V.R.'s story had changed about running away in 2006. Defense counsel also brought out several inconsistencies between what A.R. told the caseworker and how she testified at trial, including whether Rodriguez had ever made her feel uncomfortable.

### 4. V.R., the Alleged Victim

During her testimony, V.R. provided a detailed description of the alleged abuse. She was very emotional as she described the times when Rodriguez assaulted her in the back room of the family's phone store. V.R. explained the first incident occurred when she was in sixth grade; she was with Rodriguez, at the store, at closing time. V.R. testified that she was in the back room when Rodriguez came in and started kissing her and instructed her to remove her clothes. He told

her to lay on the couch; Rodriguez attempted to put "his penis in my vagina, but he couldn't." V.R. testified to contact by his penis and her vagina, but no penetration during the first incident.

The second time, according to V.R., Rodriguez began by giving her alcohol to relax her. Rodriguez inserted his fingers into her vagina before progressing to penetration by his penis. In describing the second incident, V.R. testified to both digital and penile penetration. V.R. also explained that Rodriguez kept the condoms and contraceptive bullets "up in the attic"—later identified as the crawl space above the ceiling in the back room of the store. V.R. was adamant the abuse started before she turned fourteen.

V.R. also testified about previous incidents from 2006. She explained that Rodriguez would come into her room while she was sleeping and lay beside her. During those episodes, V.R. testified that she pretended to stay asleep while Rodriguez touched her everywhere, "my boobs, and my vagina, and my butt." When asked by the prosecutor, V.R. testified she originally told a friend, but was too scared to tell her mother. V.R. further explained that she did not tell anyone, in part, due to Rodriguez's threats of physical harm against her and her family.

During cross-examination, defense counsel questioned V.R. extensively about the inconsistencies in her recorded statement and her testimony. He questioned V.R. about her calm, very matter-of-fact demeanor to the officer as compared to her very emotional state before the jury. Defense counsel also questioned V.R. regarding when the alleged abuse began. On the video recording, V.R. told the officer that no penetration occurred prior to her fourteenth birthday, however; at trial, V.R. testified the penetration preceded her turning fourteen. She also conceded that she never mentioned to the officers that Rodriguez threatened her.

*5.      Dr. Nancy Kellogg*

Dr. Nancy Kellogg, the child-abuse physician who examined V.R. shortly after the incident was reported, testified that V.R.'s examination was consistent with penetration. Dr. Kellogg

explained the detailed process she undertakes when examining a child and the importance of the complainant's history. Dr. Kellogg further testified that according to her notes, V.R. reported that Rodriguez "was forcing me to have sex" and "[t]he first time it happened was in January right before my [fourteenth] birthday."

## B.    Directed Verdict and Charge Conference

After Dr. Kellogg's testimony, the defense moved for a directed verdict on counts I through IV in the State's indictment, based on the lack of evidence that penetration occurred prior to V.R.'s fourteenth birthday. The trial court ruled that because of conflicting testimony regarding the date of the alleged penetration, there was a question of fact for the jury's determination and the court denied the directed verdict as to counts I through IV.

Defense counsel also moved for a directed verdict as to counts V through VIII, the indecency with a child allegations, on the basis that such allegations were lesser included offenses of the aggravated sexual assault charges in counts I through IV. The State agreed to waive count IV, and the trial court sustained defense counsel's objections as to counts VII and VIII. Based on its rulings, the trial court denied defense counsel's motion for directed verdict on Counts V and VI, and proceeded to the jury for verdict as to counts I, II, III, V, and VI.

## C.    Verdict and Sentencing

The jury returned guilty verdicts on all counts and the case was reset for punishment on December 19, 2012. The State proved up its enhancement allegation that Rodriguez was previously found guilty of involuntary manslaughter. At sentencing, Rodriguez's new defense counsel called Rodriguez's mother and father as character witnesses. Rodriguez also testified and explained his involvement in a previous involuntary manslaughter conviction.

The trial court found the State's enhancement true and sentenced Rodriguez to thirty-years confinement in the Institutional Division of the Texas Department of Criminal Justice and assessed a fine in the amount of $10,000.00.

Rodriguez raises several issues on appeal. For purposes of this opinion, we address Rodriguez's complaints in the following order: (1) alleged error in the charge—lack of unanimity instruction and double jeopardy; (2) the State's comments during closing argument amounted to a comment on Rodriguez's failure to testify; and (3) ineffective assistance of counsel.

## ALLEGED ERROR IN THE TRIAL COURT'S CHARGE

Rodriguez claims the court's charge was erroneous for two reasons: (1) the charge did not provide an adequate instruction to ensure the convictions returned by the jury were unanimous, and (2) several of the counts contained within the court's charge were actually lesser included offenses of other counts and the charge, therefore, violated his constitutional rights against double jeopardy.

We first address Rodriguez's claims based on lack of juror unanimity.

## A.    Inadequate Unanimity Instruction within the Court's Charge

A jury must reach a unanimous verdict about the specific crime the defendant committed. *See* U.S. CONST. amends. V, XIV; TEX. CONST. art. V, § 13; TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (West Supp. 2013); *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011); *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008). "[T]he jury must 'agree upon a single and discrete incident that would constitute the commission of the offense alleged.'" *Cosio*, 353 S.W.3d at 771 (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)). "[N]on-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions." *Id*. at 772.

When evidence is presented regarding multiple incidents, which would individually establish different offenses, the "[court's] charge, to ensure unanimity, would need to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented." *Id.*; *accord Ngo v. State*, 175 S.W.3d 738, 748–49 (Tex. Crim. App. 2005) (describing how breast-touching and genital-touching were different offenses of indecency with a child and improperly charged in one count of indecency in the disjunctive); *Francis v. State*, 36 S.W.3d 121, 124–25 (Tex. Crim. App. 2000) (same); *De Los Santos v. State*, 219 S.W.3d 71, 76–77 (Tex. App.—San Antonio 2006, no pet.) (same). Because the burden rests on the court to instruct the jury as to the law applicable to the case, the trial court must submit a charge to the jury that "does not allow for the possibility of a non-unanimous verdict." *Cosio*, 353 S.W.3d at 776.

### 1. *Arguments of the Parties*

Rodriguez argues his due process rights were violated because the trial court's charge allowed the jury to return a less than unanimous verdict based on its failure to provide adequate language to ensure the convictions were unanimous. Rodriguez points to the inconsistencies in the testimony as to (1) whether the abuse started in 2006 or 2008, (2) whether any of the allegations occurred before V.R's fourteenth birthday, and (3) jury confusion based on V.R.'s testimony as to which incidents were included in the court's charge.

The State contends the jury was properly charged in the disjunctive for an indictment alleging alternative methods of committing the same offense.

### 2. *Standard of Review*

We first determine if error occurred and, "if we find error, we analyze that error for harm." *Ngo*, 175 S.W.3d at 743 (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). If there was error, and the appellant objected to the error at trial, reversal is required when the error is "'calculated to injure the rights of the defendant'"; defined to mean that there is "some harm."

*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). If, as in this case, the error was not objected to, reversal is only required if the harm was so egregious and created such harm that the defendant "'has not had a fair and impartial trial.'" *Id*. at 172 (quoting *Ross v. State*, 487 S.W.2d 744, 745 (Tex. Crim. App. 1972)); *see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal.").

*3.    The Charge*

The court's charge alleged two acts of aggravated sexual assault by penetration, one count of aggravated sexual assault by contact, and two counts of indecency with a child.

V.

Now, if you find from the evidence beyond a reasonable doubt that on or about the 15th Day of December, 2008, in Bexar County, Texas, the defendant, Juan Rodriguez, did intentionally or knowingly cause the penetration of the sexual organ of [V.R.], a child who was younger than 14 years, by Juan Rodriguez's sexual organ, then you will find the defendant guilty of aggravated sexual assault of a child as charged in Count I of the indictment.

If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty in Count I.

VI.

Now, if you find from the evidence beyond a reasonable doubt that on or about the 15th Day of December, 2008, in Bexar County, Texas, the defendant, Juan Rodriguez, did intentionally or knowingly cause the penetration of the sexual organ of [V.R.], a child who was younger than 14 years, by Juan Rodriguez's finger, then you will find the defendant guilty of aggravated sexual assault of a child as charged in Count II of the indictment.

If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty in Count II.

VII.

Now, if you find from the evidence beyond a reasonable doubt that on or about the 15th Day of December, 2008, in Bexar County, Texas, the defendant, Juan Rodriguez, did intentionally or knowingly cause the sexual organ of Juan Rodriguez to contact the sexual organ of [V.R.], a child who was younger than 14 years, then you will find the defendant guilty of aggravated sexual assault of a child as charged in Count III of the indictment.

If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty in Count III.

VIII.

Now, if you find from the evidence beyond a reasonable doubt that on or about the 15th Day of December, 2008, in Bexar County, Texas, the defendant, Juan Rodriguez, did intentionally or knowingly engage in sexual contact with [V.R.], a female child younger than seventeen (17) years and not the spouse of the [sic] Juan Rodriguez by touching the part of the genitals of [V.R.] with the intent to arouse or gratify the sexual desire of any person, then you will find the defendant guilty of indecency with a child as charged in Count V of the indictment.

If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty in Count V.

IX.

Now, if you find from the evidence beyond a reasonable doubt that on or about the 15th Day of December, 2008, in Bexar County, Texas, the defendant, Juan Rodriguez, did intentionally or knowingly engage in sexual contact with [V.R.], a female child younger than seventeen (17) years and not the spouse of the [sic] Juan Rodriguez by touching the breast of [V.R.] with the intent to arouse or gratify the sexual desire of any person, then you will find the defendant guilty of indecency with a child as charged in Count VI of the indictment.

If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty in Count VI.

*4.     Alleged Error*

We must first determine whether the court's charge allowed for the possibility of non-unanimous verdicts.

A jury charge is not incorrect simply because separate offenses are stated in the disjunctive; rather, a jury charge submitted in the disjunctive is incorrect if it fails to clarify that the jury must unanimously agree on at least one act that constitutes a statutory offense. *See Warner*, 245 S.W.3d at 464; *Ngo*, 175 S.W.3d at 749. In *Ngo*, the Court of Criminal Appeals held that the Texas Constitution requires each juror to agree that the defendant committed the same specific criminal act. *Ngo*, 175 S.W.3d at 749 ("The error here is not in submitting the three separate offenses 'in

the disjunctive.' The error is in failing to instruct the jury that it must be unanimous in deciding which one (or more) of the three disjunctively submitted offenses it found appellant committed.").

### a.  Charged Offenses

Rodriguez was charged and convicted under Texas Penal Code section 22.021, aggravated sexual assault, a conduct-oriented offense. TEX. PENAL CODE ANN. § 22.021 (West 2011); *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999) ("Article 22.021 is a conduct-oriented offense in which the legislature criminalized very specific conduct of several different types."). The statute provides that "each separately described conduct constitutes a separate statutory offense." *Vick*, 991 S.W.2d at 833; *Hendrix v. State*, 150 S.W.3d 839, 846 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Rodriguez was also charged under Texas Penal Code 21.11, indecency with a child, likewise a conduct-oriented offense. TEX. PENAL CODE ANN. § 21.11; *Pizzo v. State*, 235 S.W.3d 711, 719 (Tex. Crim. App. 2007); *Ex parte Chafin*, 180 S.W.3d 257, 259 (Tex. App.—Austin 2005, no pet.). Thus, each alleged act, i.e., touching V.R.'s genitals, touching V.R.'s breast, and penetration of her sexual organ, constitutes a different criminal offense and juror unanimity is required. *Pizzo*, 235 S.W.3d at 719; *accord Loving v. State*, 401 S.W.3d 642, 648 (Tex. Crim. App. 2013).

Rodriguez contends the court's charge did not provide adequate instruction to ensure the jury's verdict was unanimous as to each separate count. *Cosio*, 353 S.W.3d at 771–72. As the *Cosio* Court explained:

> Non-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions. Each of the multiple incidents individually establishes a different offense or unit of prosecution. The judge's charge, to ensure unanimity, would need to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented.

*Id.* at 772 (footnote omitted). In the present case, the jury was provided different verdict forms for each offense charged. In Counts I, II, III, V, and VI, the State alleged five different and distinct offenses. The charge instructed the jury it must reach a unanimous verdict, and each of the jurors was required to sign each individual verdict form. *Cf. Martinez v. State*, 225 S.W.3d 550, 555 (Tex. Crim. App. 2007) (explaining that the trial court bore the burden of converting four verdicts into three judgments); *Cosio*, 353 S.W.3d at 770 (noting there was no instruction about which instance constituted commission of the offense); *Arrington v. State*, 413 S.W.3d 106, 111–12 (Tex. App.—San Antonio 2013, pet. granted) (noting the complainant testified to multiple instances of criminal acts constituting offenses on different occasions that could support the counts on which appellant was convicted).

### b. Evidence at Trial

Here, the State contends V.R. testified as to very specific acts of sexual contact for which she provided detailed testimony and distinguishing events. Reciting the evidence of the different offenses, the State supports each count separately:

Count I: Rodriguez penetrated her vagina with his penis (this was alleged as the second incident at the store)

Count II: Rodriguez used his fingers to penetrate V.R.'s vagina prior to the penile penetration in Count I (this was alleged as part of the second incident at the store)

Count III: Rodriguez attempted, but was unsuccessful at penile penetration, thereby amounting to contacting his sexual organ with her vagina (this was alleged as part of the first incident at the shop)

Count V: Rodriguez came into V.R.'s bedroom and touched her vagina

Count VI: Rodriguez came into V.R.'s bedroom and touched her breasts

### c. Alleged Confusion

Although V.R. testified that the abuse occurred on several occasions, she did not provide many specific details as to the other alleged assaults. Her testimony was primarily limited to the specific aggravated sexual assaults at the family's store and the indecency allegations at their

apartment. The record does not support Rodriguez's contention that the jury could confuse the specific, detailed testimony regarding each individual offense with the very vague reference V.R. made to such sexual contact happening on several occasions. *See Cueva v. State*, 339 S.W.3d 839, 850 (Tex. App.—Corpus Christi 2011, pet. ref'd) (holding complainant's vague testimony that appellant touched her on more than one occasion did not create danger of confusion on specific testimony of charged offense).

The jury was instructed that, "In order to return a verdict, each juror must agree to that verdict . . ." The application paragraph for each count correlated to a different verdict form, which required each of the jurors to sign the verdict form indicating this was his or her verdict. Accordingly, we conclude the court's charge was sufficiently divided and provided adequate language to ensure that the jury's verdict was unanimous as to each separate offense and a unanimity instruction was not required in this instance. *Cosio*, 353 S.W.3d at 771–72.

Even assuming the charge was erroneous, Rodriguez did not object at trial, and thus he must prove egregious harm under *Almanza*. We, therefore, review the alleged error for egregious harm.

### 5.    *Harm Analysis*

Egregious harm "must be based on a finding of actual rather than theoretical harm." *Id*. at 777 (citing *Ngo*, 175 S.W.3d at 750); *Warner*, 245 S.W.3d at 464. To obtain a reversal, the record must show the error "affected 'the very basis of the case,' 'deprive[d] the defendant of a valuable right,' or 'vitally affect[ed] a defensive theory.'" *Cosio*, 353 S.W.3d at 777 (alterations in original) (quoting *Almanza*, 686 S.W.2d at 171). In determining whether egregious harm is shown, we look at "1) the charge itself; 2) the state of the evidence including contested issues and the weight of the probative evidence; 3) arguments of counsel; and 4) any other relevant information revealed

by the record of the trial as a whole." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *accord Cosio*, 353 S.W.3d at 777.

Rodriguez contends the harm flows from the possibility that the jurors were not unanimous as to which act constituted the charged offense. But the charge included a *general* instruction informing the jury that its verdict had to be unanimous. Moreover, neither the attorneys nor the trial court made any statements leading the jury to believe it did not have to be unanimous as to the specific criminal conduct associated with each verdict. *Compare Ngo*, 175 S.W.3d at 750–52 (relating that prosecutor and judge both misstated law concerning unanimity on multiple occasions during trial), *with Cosio*, 353 S.W.3d at 777 (observing that the record does not support misstatements of the law before the jury).

A review of the entire record does not suggest any confusion as to what conduct the State alleged was unlawful. Although V.R. testified that Rodriguez's sexual contact with her happened "a lot," she described in great detail two incidents of aggravated sexual assault at the store and incidents of indecency at the apartment. Importantly, Rodriguez's defense, like that in *Cosio*, was not that he did not commit *these specific* alleged incidents, but that he did not commit *any* of the alleged acts. *Cosio*, 353 S.W.3d at 777–78. This was evident in Rodriguez's focus on the lack of evidence to substantiate the State's charges. During closing argument, defense counsel directed the jury to V.R.'s "outrageous claims" and the lack of evidence linking Rodriguez to any of the allegations. He also highlighted the difference between V.R.'s demeanor with the officers and her demeanor before the jury. Rodriguez claimed V.R. loved Rodriguez, "she had a crush on him," and V.R. was upset because Rodriguez "was in love with her mom, not her." The jury was not persuaded by his argument and clearly found otherwise. *Id.*

Additionally, the record does not substantiate a significant question was raised regarding unanimity. To the contrary, the evidence supports the jury unanimously agreed that Rodriguez

committed the alleged conduct in each of the five counts contained within the court's charge. This determination is further supported by the fact that *each* juror signed *each* verdict form affirming their vote that Rodriguez was guilty of the offense as charged in the corresponding count of the indictment.

Thus, even if the submitted charge was in error, we cannot conclude Rodriguez suffered egregious harm or was denied a fair and impartial trial. *Id*. at 777; *Almanza*, 686 S.W.2d at 171. We overrule Rodriguez's issue as to the court's failure to provide a unanimity instruction.

We, therefore, turn to the alleged double jeopardy violation contained within the court's charge.

## B.     Double Jeopardy

Rodriguez next contends that because Count III is a lesser included offense of Count I, and Count V is a lesser included offense of Count II, the trial court should have vacated Counts III and V. "[B]ecause of the fundamental nature of double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal. . . ." *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).

### 1.     Courts' Application of Double Jeopardy to Allegations of Aggravated Sexual Assault and Indecency with a Child

The Fifth Amendment guarantee against double jeopardy protects a defendant against multiple punishments for the same offense. *Hutchins v. State*, 992 S.W.3d 629, 631 (Tex. App.—Austin 1999, pet. ref'd, untimely filed) (citing *Illinois v. Vitale*, 447 U.S. 410, 415 (1980)). When the same act or transaction violates two different penal statutes, the two offenses are the same for double jeopardy purposes if one of the offenses contains all the elements of the other; they are not the same if each offense has a unique element. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932). Absent a clear indication of contrary legislative intent, it is presumed that the

legislature did not intend to authorize multiple punishments for two offenses that are the same under the *Blockburger* test. *See Whalen v. United States*, 445 U.S. 684, 691–92 (1980). Rodriguez argues his indecency conviction and his aggravated sexual assault by contact are necessarily lesser included offenses of aggravated sexual assault.

It has long been the law in Texas that "[v]arious acts of sexual abuse committed over a period of time do not comprise a single offense; rather, a person who commits 'multiple discrete assaults against the same victim' is liable for separate prosecution and punishment for each separate act of abuse." *De Los Santos*, 219 S.W.3d at 77 (quoting *Vernon v. State*, 841 S.W.2d 407, 410 (Tex. Crim. App. 1992)); *accord Huffman v. State*, 267 S.W.3d 902, 906–07 (Tex. Crim. App. 2008). The question arises when only one sexual offense is alleged to have occurred.

In *Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998), the defendant argued that because the State only alleged the occurrence of one sexual offense on the day in question, he could not be convicted of both indecency with a child and aggravated sexual assault. The Court of Criminal Appeals agreed concluding that the defendant may not be convicted of two offenses when the evidence shows only one offense was committed. *Id.* Instead, the court concluded the evidence actually supported the defendant "committed one act which could be subject to two different interpretations." *Id.* In such a case, "[e]ither the jury could conclude penetration actually occurred and convicted appellant of aggravated sexual assault, or they could conclude only contact occurred with intent to arouse and gratify sexual desire and convicted appellant of the lesser offense of indecency with a child." *Id.* Our focus is therefore "whether the evidence in this case justified the trial court in submitting instructions that would permit the jury to convict and sentence appellant *both* for committing aggravated sexual assault and for committing indecency with a child" on a particular date. *Id.* at 907 (emphasis added).

We must, therefore, determine if the evidence shows Counts I and III support the commission of one offense or two offenses. Likewise, we must make the same determination as to Counts II and V.

### 2.    *Convicted Offenses*

The jury convicted Rodriguez of the three counts of aggravated sexual assault of a child alleged to have occurred on or about December 15, 2008. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) ("causes the penetration of the anus or sexual organ of a child by any means"); *id.* § 22.021(a)(1)(B)(iii) ("causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor"). The jury also convicted Rodriguez of two counts of indecency with a child alleged to have occurred on the same date. TEX. PENAL CODE ANN. § 21.11(a)(1) ("engages in sexual contact with the child or causes the child to engage in sexual contact").

"'It is well settled that the "on or about" language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period.'" *Sanchez v. State*, 400 S.W.3d 595, 600 (Tex. Crim. App. 2013) (quoting *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997)).

Sexual contact that occurs in the course of an act of sexual penetration is subsumed in the completed act. *Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004). Moreover, a conviction for both the completed act of penetration and for sexual contact or exposure incident to the penetration constitutes double jeopardy. *Id.* The question this court must answer is whether Rodriguez's convictions for indecency with a child and aggravated sexual assault by contact was "subsumed" in the completed act of aggravated sexual assault by penetration. *See Bottenfield v.*

*State*, 77 S.W.3d 349, 358 (Tex. App.—Fort Worth 2002, pet. ref'd) (concluding acts may be separate and distinct for purposes of double jeopardy).

### 3. *Analysis*

As previously set forth, V.R. testified Rodriguez sexually assaulted her on several different occasions, both at their store and at their apartment. The facts presented at trial included specific details pertaining to two incidents at the store and two incidents at the apartment.

### a. Count III is a not lesser included offense of Count I

In Count I, the jury convicted Rodriguez of intentionally or knowingly causing the penetration of the sexual organ of V.R. with his own sexual organ; in Count III, the jury convicted Rodriguez of contacting the sexual organ of V.R. with his sexual organ. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (iii). As discussed above, V.R. testified that the first time Rodriguez sexually assaulted her, he did not penetrate her. According to V.R., Rodriguez touched her vagina with his penis, but did not penetrate. She testified, however, the second time he sexually assaulted her, he gave her alcohol to relax her and then penetrated her vagina with his penis.

### b. Count V is a not lesser included offense of Count II

In Count II, the jury convicted Rodriguez of intentionally and knowingly causing the penetration of V.R.'s sexual organ with his finger and in Count V, the jury convicted Rodriguez of intentionally and knowingly engaging in sexual contact with V.R. by touching her genitals. *See id*. §§ 22.021(a)(1)(B)(i), 21.11(a)(1). V.R. testified that during the second assault, Rodriguez began by giving her alcohol, penetrated her vagina with his fingers, and then progressed to penetrate her vagina with his penis. She further testified, that in 2006, Rodriguez would come into her bedroom, lay down beside her, and touch her vagina. These two allegations were neither part of the same incident, nor occurred at the same location.

*4.      Application to the Charge*

The testimony presented at trial was sufficient to support the jury's determination that Rodriguez was guilty of separate acts of aggravated sexual assault in Counts I and III and separate and distinct offenses of aggravated sexual assault and indecency with a child in Counts II and V. These were not allegations of separate offenses from a single interaction. In each case, Counts I and III, and Counts II and V, the State presented evidence the allegations were separate actions and not the same underlying conduct. *See Beltran v. State*, 30 S.W.3d 532, 534 (Tex. App.—San Antonio 2000, no pet.); *Hutchins*, 992 S.W.2d at 633.

Because the evidence presented at trial warranted convictions against Rodriguez for all five charges, the verdicts did not violate Rodriguez's rights against double jeopardy. *Ochoa*, 982 S.W.2d at 907.

Finding no error in the court's charge, we turn to Rodriguez's issue concerning the State's closing argument.

## COMMENT ON RODRIGUEZ'S FAILURE TO TESTIFY

Rodriguez complains the State's comment, made during closing argument, "we can't say anything about the fact that they chose not to say anything," was an improper comment on his right not to testify. We review the comment within the context of the entire argument.

At the beginning of the State's closing argument, the State explained the jury would be hearing from both attorneys and they were "going to hear a lot of argument." He continued, "I just want to give you some advice about how to listen to lawyers once they start making arguments." He further analogized the presentation of the case to a puzzle and how each attorney might look at a piece differently.

> State:      Here's another thing I want to tell you. Lawyers aren't always going to tell you what it is we're thinking. Normally you tell what a lawyer is thinking by focusing on what they spend most of their time talking

> about. Now, they have the right to sit there and not say a word. They don't have to say a word during voir dire. They don't have to give an opening statement. They don't have to question witnesses. They don't have to give a closing argument.
>
> Now, this is a trial, lawyers are always going to cut into a few witnesses and try to give you a good speech, like you know that just from watching TV. Here's a rule, though, if they don't say anything, we can't say anything about the fact that they chose not to say anything. We can't comment on their choice.

The Defense immediately objected

> Defense: He's obviously commenting on, you know, the defendant not testifying and is not presenting the case.
>
> Court: Restating the Court's Charge, as I hear it, so respectfully overruled.

## A.  Arguments of Parties

Rodriguez argues the State was attempting to subvert the law prohibiting comments on a defendant's failure to testify by telling the jury that they are not allowed to comment on a defendant's failure to testify. The State counters the argument was an explanation of the court's charge and the process being undertaken by the jury. Moreover, the State contends the comments would not necessarily be taken as a comment on the defendant's failure to testify and that statement was a correct statement of law.

## B.  Standard of Review

We review a trial court's ruling on an objection to improper jury argument for an abuse of discretion. *Nzewi v. State*, 359 S.W.3d 829, 841 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *see Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010) (concluding no abuse of discretion by trial court in sustaining state's objection to appellant's jury argument). Such argument does not result in reversal "unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App.

2000). "The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id.*

## C.    Proper Jury Argument

"The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial in order to arrive at a just and reasonable conclusion based solely on the evidence." *Harris v. State*, 122 S.W.3d 871, 883 (Tex. App.—Fort Worth 2003, pet. ref'd); *accord Zambrano v. State*, No. 04-12-00853-CR, 2014 WL 852130, at *6 (Tex. App.—San Antonio 2014, no pet.). "[P]roper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Wesbrook*, 29 S.W.3d at 115 (same); *accord Coble v. State*, 871 S.W.2d 192, 204 (Tex. Crim. App. 1993) (same). A prosecuting attorney is permitted in his argument to draw from the facts in evidence, all inferences which are reasonable, fair, and legitimate, but he may not use the jury argument to introduce before the jury, either directly or indirectly, evidence which is outside the record. *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990) (citing *Jordan v. State*, 646 S.W.2d 946, 948 (Tex. Crim. App. 1983)).

## D.    Analysis

"When addressing a complaint of improper comments on a defendant's failure to testify in his own behalf, we review the language from the standpoint of the jury." *Staley v. State*, 887 S.W.2d 885, 895 (Tex. Crim. App. 1994) (citing *Swallow v. State*, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992)). Here, the record substantiates the trial court understood the State's argument as an attempt to explain the court's charge.

"'It is not sufficient that the language *might* be construed as an implied or indirect allusion to the defendant's failure to testify.'" *Madden v. State*, 799 S.W.2d 683, 699 (Tex. Crim. App.

1990) (emphasis added) (quoting *Montoya v. State*, 744 S.W.2d 15, 35 (Tex. Crim. App. 1987)). "A mere indirect or implied allusion to the accused's failure to testify does not violate appellant's rights." *Patrick v. State*, 906 S.W.2d 481, 490–91 (Tex. Crim. App. 1995).

Viewing the language from the standpoint of the jury, our review of the record does not support a conclusion that the jury would naturally and necessarily consider the prosecutor's statement to be a comment on Rodriguez's failure to testify or take the remark as manifestly intended to be a comment on his failure to testify. *See Wesbrook*, 29 S.W.3d at 115. Still further, the court's charge expressly instructed the jury not to consider Rodriguez's failure to testify or take it as a circumstance against him.

> Our law provides a defendant may testify in his own behalf if he elects to do so. This, however, is a right accorded a defendant; and, in the event he elects not to testify, that fact cannot be taken as a circumstance against him.

We are further reminded "[t]he law generally presumes that instructions to disregard and other cautionary instructions will be duly obeyed by the jury." *Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011) (citing *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987)). We find no evidence in the record to support a contention the jury did not follow this instruction.

Accordingly, we overrule this issue.

Finally, we turn to Rodriguez's contention that he was denied effective assistance of counsel when his trial counsel (1) allowed the State's outcry witness to improperly refresh her recollection and (2) failed to object to improper hearsay and bolstering testimony.

INEFFECTIVE ASSISTANCE OF COUNSEL

**A.      Standard of Review**

In order to establish that trial counsel rendered ineffective assistance, Rodriguez must "establish two components by a preponderance of the evidence: deficient performance of trial counsel and harm resulting from that deficiency that is sufficient to undermine the confidence in

the outcome of the trial." *Ex parte Moore*, 395 S.W.3d 152, 157 (Tex. Crim. App. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *accord Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). To establish the first prong, deficient performance, Rodriguez must prove that his attorney's performance "'fell below an objective standard of reasonableness' under prevailing professional norms and according to the necessity of the case." *Ex parte Moore*, 395 S.W.3d at 157 (quoting *Strickland*, 466 U.S. at 687–88). To establish harm, Rodriguez "must demonstrate that he was prejudiced by his attorney's performance or that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 158 (quoting *Strickland*, 466 U.S. at 694).

"An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Id.* Therefore, Rodriguez "'must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Ex parte Moore*, 395 S.W.3d at 157 (quoting *Strickland*, 466 U.S. at 689).

"A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal." *Thompson*, 9 S.W.3d at 813. "In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Id.* at 813–14. "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). In the absence of a developed record, we will not "speculate as to the reasons why trial counsel acted as he did, rather [we] must presume that the actions were taken as part of a strategic plan for representing the client." *Rodriguez v. State*, 336 S.W.3d 294, 302 (Tex. App.—San

Antonio 2010, pet. ref'd). Moreover, an "appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Menefield*, 363 S.W.3d at 593 (citing *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

We note that although Rodriguez filed a motion for new trial, he did not allege ineffective assistance of counsel or request a hearing on the same. Thus, the record does not contain any evidence of defense counsel's reasoning or lack thereof. *See Rodriguez*, 336 S.W.3d at 302.

## B.     Arguments of the Parties

As evidence for his complaint of ineffective assistance of counsel, Rodriguez contends that Leilani did not have an independent recollection of the events about which she testified and that the record supports she was "utilizing some sort of recordation to help her in her testimony." He contends her testifying with the notes prevented appropriate cross-examination and denied him his right to confrontation. Additionally, Rodriguez argues defense counsel allowed a "plethora of hearsay testimony . . . elicited with no objection." Specifically, because Leilani was designated as the State's outcry witness, the testimony of V.R.'s sisters, C.R. and A.R., was inadmissible hearsay.

The State contends there is no evidence that Leilani actually used notes, much less used them to refresh her memory during her testimony. However, even if notes were used, Rule 612 of the Texas Rules of Evidence allows a witness to use a writing to refresh his or her memory. TEX. R. EVID. 612 (providing "adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness"). With regard to the hearsay allegations, the State argues the testimony of V.R.'s sisters was not offered for the truth of the matter asserted.

**C.** **Analysis**

*1.* *Notes Used by Leilani*

Rodriguez contends Leilani's use of notes during her testimony violated his right to confrontation. The Sixth Amendment to the United States Constitution and article I, section 10 of the Texas Constitution guarantee the right of an accused in a criminal prosecution to be confronted with the witnesses against him. U.S. CONST. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *Knox v. State*, 31 S.W.3d 700, 702 (Tex. App.—Houston [1st Dist.] 2000, no pet.). The right to confront one's accuser necessarily includes the right to cross-examination. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996).

As the State points out, the record does not support the presence of any notes. *Cf. Pondexter v. State*, 942 S.W.2d 577, 582 (Tex. Crim. App. 1996) (holding defendant entitled to notes used to refresh witness's memory). Although there are references to confusion in the testimony and different dates provided, the record does not substantiate Rodriguez's claims that Leilani was testifying with the use of notes. As such, we cannot conclude there was a violation of Rodriguez's right to confront the witness.

*2.* *Hearsay*

Rodriguez next argues Leilani was the only appropriate outcry witness and the testimony of V.R.'s sisters was, therefore, inadmissible hearsay.

Article 38.072 provides an exception to the hearsay rule by allowing evidence of an "outcry statement" by a child complainant younger than fourteen years old. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a). When a defendant is charged with certain offenses against a child under the age of fourteen, article 38.072 allows into evidence the complainant's out-of-court statement so long as that statement describes the alleged offense and is offered into evidence by the first

adult to whom the child made a statement about the offense. *Id*.; *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011).

By allowing V.R.'s sisters to testify, Rodriguez contends defense counsel allowed testimony whose sole purpose was to bolster and add credence to previous testimony. "Bolstering" is "any evidence the *sole* purpose of which is to convince the factfinder that a particular witness . . . is worthy of credit, without substantively contributing 'to make the existence of [a] fact . . . more or less probable than it would be without the evidence.'" *Cohn v. State*, 849 S.W.2d 817, 819–20 (Tex. Crim. App. 1993) (second alteration in original) (citations omitted).

There are, however, plausible reasons for trial counsel's not objecting to hearsay. *See Thompson*, 9 S.W.3d at 814 (holding presumption of strategy not rebutted when record was "silent as to why appellant's trial counsel failed to object to the State's persistent attempts to elicit inadmissible hearsay"). Defense counsel may have strategically decided to let both of V.R.'s sisters testify. *See Garcia v. State*, 57 S.W.3d 436, 440–41 (Tex. Crim. App. 2001) (opining that where record did not contain express reasons for counsel's conduct, court reviewed record, speculated what counsel's strategy might have been, and determined whether under the circumstances it might have been a sound trial strategy). Defense counsel spent a great amount of effort pointing out the inconsistencies in their stories and supporting his contention the girls did not like Rodriguez because he was too strict. We, therefore, conclude that Rodriguez was unsuccessful in showing that counsel's failure to object to the alleged hearsay statements deprived him of a fair trial. *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010).

## D.     Conclusion

Upon review of the entire record, we conclude Rodriguez failed to affirmatively demonstrate his ineffective assistance of counsel claims. *See Ex parte Moore*, 395 S.W.3d at 157; *Freeman v. State*, 125 S.W.3d 505, 506–07 (Tex. Crim. App. 2003); *Thompson*, 9 S.W.3d at 813.

The record reflects that counsel filed pretrial motions and successfully obtained continuances to allow him to prepare for Rodriguez's trial. At trial, counsel conducted extensive cross-examination of all the witnesses. He moved for a directed verdict and successfully reduced the number of counts presented to the jury. Additionally, trial counsel made articulate and impassioned arguments before the jury.

The fact that other counsel may have tried the case differently, does not show ineffective assistance. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To the contrary, we are bound by the strong presumption that defense counsel's conduct was reasonable and professional and could be considered sound trial strategy. *Id.* Rodriguez's claims are not firmly founded in the record and we will not engage in retrospective speculation. *Id.*; *Jackson*, 877 S.W.2d at 771 (holding appellate court will not indulging in speculation concerning trial counsel's decision-making process); *Ex parte Moore*, 395 S.W.3d at 157. We conclude that Rodriguez failed to show counsel's performance was deficient; therefore, we need not address prejudice. *See Garcia*, 57 S.W.3d at 440.

Accordingly, we overrule Rodriguez's issues related to ineffective assistance of counsel.

### CONCLUSION

Having overruled each of Rodriguez's issues raised on appeal, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

Publish