

# Fourth Court of Appeals
## San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-17-00669-CR

Michael Anthony **RAMOS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CR1344A
Honorable Maria Teresa Herr, Judge Presiding[1]

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Luz Elena D. Chapa, Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: April 24, 2019

AFFIRMED

Michael A. Ramos appeals multiple convictions for causing bodily injury and serious bodily injury to a child, T.G.[2] Ramos complains of insufficiency of the evidence, charge error, the trial court's failure to order a mistrial sua sponte, improper jury argument, and the trial court's failure to hold a hearing on his motion for new trial. We affirm Ramos's convictions.

---

[1] Sitting by assignment.
[2] We refer to the minor child by his initials. *See* TEX. R. APP. P. 9.10(a)(3).

BACKGROUND

In January 2016, three-year-old T.G. was living with his mother Lizzette and her boyfriend, Ramos. Jared Garno moved into the apartment and agreed to babysit T.G. while Lizzette and Ramos were at work. In February 2016, T.G.'s grandmother and aunt visited the apartment and, after discovering T.G. had bruises and other visible injuries, they called the police. T.G. was eventually transported to the hospital.

Ramos was indicted for multiple counts of causing bodily injury and serious bodily injury to T.G., and the case was tried to a jury. At trial, Garno testified Ramos hit T.G. with his hand, injuring T.G.'s eye, when Ramos became upset with T.G. He also testified he saw Ramos spank T.G., causing bruising. Garno further testified he saw Ramos push, kick, and step on T.G.; push T.G. off of a chair; forcibly throw T.G. on a bed, causing T.G. to hit his back on the bed and then hit his head on the ground; and bite T.G.'s arm and finger. He explained T.G. was bruised and started limping after Ramos stepped on T.G. Garno also testified he saw Ramos repeatedly pull on the tip of T.G.'s penis, causing a cut on T.G.'s penis. Other evidence, including the testimony of T.G.'s grandmother and aunt and a recording of Ramos's conversation with the police, showed Ramos and Lizzette explained T.G.'s injuries were accidental.

Dr. James Lukefahr, a child abuse pediatrician, testified T.G. had extensive bruising and swelling around his left eye, a hemorrhage on the surface of his left eye that left redness and bleeding, and internal injuries to his eye. T.G. also had numerous bruises on his face in varying sizes and shapes, and on his hand. T.G. had two bone fractures, one in his pubic bone on the front right side of his genital area and one in his lower spine. He had seven compression fractures in his upper spine. Dr. Lukefahr also testified T.G. had ten bite marks on his body, a laceration on his penis, and bruising on his scrotum. He opined that T.G.'s physical injuries were indicative of

abuse, and it would be impossible for some of T.G.'s injuries to be caused by the types of accidents that Ramos and Lizzette had described.

After hearing the evidence, the jury found Ramos guilty of multiple counts of causing bodily injury to T.G. and one count of causing serious bodily injury to T.G. The jury assessed punishment and, after the trial court imposed the sentence, Ramos timely appealed.

### LEGAL SUFFICIENCY

Ramos argues there is legally insufficient evidence under *Jackson v. Virginia*, 443 U.S. 307 (1979), that: (1) he was the person who had caused T.G.'s injuries; and (2) that he caused those injuries intentionally or knowingly, as charged in the indictment. In reviewing the legal sufficiency of the evidence, we ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319; *accord Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We review the evidence "in the light most favorable to the verdict." *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). We must "defer to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (internal quotations omitted).

Garno testified he personally observed Ramos abusing T.G. by throwing him onto a bed, striking him with his hand, stepping or stomping on him, pulling T.G.'s "privates," and biting T.G. Ramos acknowledges this testimony, but argues (1) this evidence "was derived from inadmissible hearsay evidence and contradictory evidence from Jared Garno" and (2) Garno "should have been evaluated as a co-conspirator or party to the offense" and his testimony was not corroborated. However, uncorroborated accomplice witness testimony "can be sufficient to support a conviction under the legal sufficiency standard dictated by *Jackson v. Virginia*," *Taylor v. State*, 10 S.W.3d 673, 684–85 (Tex. Crim. App. 2000); we must consider all evidence—even improperly admitted

evidence—in a legal sufficiency review, *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004); and we must defer to the jury's role in resolving inconsistencies in the evidence. *Isassi*, 330 S.W.3d at 638. We hold there is legally sufficient evidence under *Jackson* to support Ramos's convictions.

### ACCOMPLICE WITNESS ISSUES

In arguing the evidence is legally insufficient under *Jackson*, Ramos asserts Garno was an accomplice witness and his testimony was not corroborated. In a separate issue, he argues he was harmed by the trial court's failure to submit an accomplice witness instruction to the jury. Ramos contends Garno was an accomplice witness because he observed Ramos continuously assault T.G., did nothing to report or stop the alleged abuse, and Garno could have been charged as an accomplice by causing injury to a child by omission.

Article 38.14 of the Texas Code of Criminal Procedure provides, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. art. 38.14. "[A] trial court must instruct the jury sua sponte in accordance with Article 38.14 where applicable." *Jackson v. State*, 487 S.W.3d 648, 658 (Tex. App.—Texarkana 2016, pet. ref'd). Because Ramos did not object at trial to the absence of an accomplice witness instruction, we must determine whether Ramos was egregiously harmed by the absence of the instruction. *See Saunders v. State*, 817 S.W.2d 688, 690 (Tex. Crim. App. 1991). "Under the egregious harm standard, the omission of an accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *State v. Ambrose*, 487 S.W.3d 587, 598 (Tex. Crim. App. 2016) (quotation marks omitted).

Ramos argues Garno also could have been charged for the same offenses of injury to T.G.—by omission—because Garno had assumed care, custody, and control of T.G. when he babysat T.G. *See* TEX. PENAL CODE § 22.04(a), (b)(2). Garno was not charged with or convicted of the same offenses. However, because the jury could have inferred Garno assumed care, custody, and control as T.G.'s babysitter, and thus had a duty to act when Ramos was at home, the jury could have found Ramos was an accomplice as a matter of fact. *See Ash v. State*, 533 S.W.3d 878, 884 (Tex. Crim. App. 2017) (holding a witness may be an accomplice as a matter of fact when the evidence permits the jury to infer the witness was an accomplice). Although the State argues that causing injury to a child by omission is not the same offense as causing injury to a child by act, "injury to a child by act and injury to a child by omission should be treated as a different means of committing the same offense." *See Villanueva v. State*, 227 S.W.3d 744, 745 (Tex. Crim. App. 2007). We therefore turn to consider Ramos's issues regarding Garno's status as an accomplice witness.

**A. Corroborating Evidence**

We first consider Ramos's assertion that the evidence is insufficient because there is no non-accomplice evidence corroborating Garno's testimony. In the accomplice witness context, "corroborating evidence . . . need not be sufficient, standing alone, to prove beyond a reasonable doubt that a defendant committed the offense." *Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007). "There need be only some non-accomplice evidence tending to connect the defendant to the crime, not to every element of the crime." *Id.* "Such evidence may be either direct or circumstantial." *Ambrose*, 487 S.W.3d at 593. In our analysis, we must eliminate the accomplice witness testimony from our consideration and view "all of the non-accomplice testimony . . . together, rather than as isolated, unrelated incidents." *See Simmons v. State*, 282 S.W.3d 504, 511 (Tex. Crim. App. 2009).

We eliminate Garno's testimony from our consideration, and assess whether the non-accomplice evidence tends to connect Ramos to the offense. "[P]roof that an accused was at or near the place where the crime occurred at or about the time that it happened, along with evidence of other circumstances," such as a motive, opportunity, flight, and attempts to conceal wrongdoing, "can be sufficient corroboration to support a conviction." *Cox v. State*, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992).

Here, the non-accomplice evidence showed Ramos was one of three adults living with T.G., and T.G.'s physical injuries were readily apparent. The trial court admitted photographs of T.G.'s injuries from the day the police were called to the apartment, and they depict numerous injuries to T.G.'s face, stomach, forearms, hands, and pelvic region. A responding police officer, Nathan Zachary, testified he went to the apartment, saw T.G., and "immediately noticed" T.G.'s injuries and T.G.'s limp. T.G.'s father testified he saw T.G. on that same day, and T.G. had bruises on his face and he had a "black eye on his left eye." A dash cam video recording was also admitted. The video shows only the side of a building, but the audio recording contains the conversation between Ramos and Officer Zachary. During the conversation, Ramos explained he, Lizzette, and Garno lived in the apartment with T.G.

The non-accomplice evidence also showed Ramos made numerous attempts to conceal T.G.'s injuries. T.G.'s grandmother, Rose, testified she and her daughter, Celeste, went to check on T.G. Rose testified she knocked on the door for four to five minutes before Ramos answered. Ramos told her "nobody lives here," including Lizzette. When Rose asked to see T.G., Ramos told her he was going to dress T.G., closed the door, and fifteen to twenty minutes went by before he opened the door again. Rose testified she saw T.G. standing in a corner, scared, which was unusual because T.G. would run up to her and hug her. She also testified T.G. was wearing a long-sleeved

shirt, and when she lifted up his sleeve, she saw T.G. had bruises. Celeste also testified, and her testimony was generally consistent with Rose's testimony.

On the audio recording, Ramos falsely told Officer Zachary, initially, that he had taken T.G. to Lizzette's workplace fifteen minutes before Officer Zachary had arrived. Ramos then admitted T.G. was inside the apartment. Officer Zachary testified T.G. was inside of a bedroom closet. When Officer Zachary asked about T.G.'s injuries, Ramos stated they were caused by their dog and T.G. running into a bookshelf. Dr. Lukefahr testified T.G.'s objective injuries, including T.G.'s bruised eye and bone fractures, were inconsistent with accidents, but were consistent with intentional physical abuse. Dr. Lukefahr also testified the bite marks on T.G. were caused by a human adult. Furthermore, T.G.'s father testified T.G. had no facial injuries at the time T.G. had moved, which was one month before the day of the father's visit. We hold non-accomplice evidence corroborates Garno's testimony.

## B. Egregious Harm

Having identified the non-accomplice evidence corroborating Garno's testimony, we next consider whether this evidence is so unconvincing so as to render the State's overall case for conviction clearly and significantly less persuasive. *See Ambrose*, 487 S.W.3d at 598. We assess the strength of non-accomplice evidence by examining its reliability or believability and the strength of its tendency to connect the defendant to the crime. *Id.*

The non-accomplice testimony discussed above was generally undisputed and key parts of Ramos's conversation with Officer Zachary on the audio recording are undisputable. This undisputed non-accomplice evidence showed Ramos lived with T.G. and T.G. had immediately apparent injuries to his face and body. Dr. Lukefahr provided extensive testimony regarding T.G.'s injuries, and opined that the likely cause of T.G.'s injuries were consistent with intentional physical abuse, and that some of the accidental explanations for T.G.'s injuries were impossible. On this

record, considering the non-accomplice witness evidence's reliability, believability, and its tendency to connect Ramos to the offenses, we cannot say this evidence is so unconvincing so as to render the State's overall case for conviction clearly and significantly less persuasive. *See id.* We therefore hold the record does not show Ramos was egregiously harmed by the trial court's failure to include an accomplice witness instruction in the jury charge.

## FAILURE TO DECLARE A MISTRIAL

Ramos argues the trial court erred by failing to declare a mistrial sua sponte. Over Ramos's hearsay objection, the trial court allowed Rose, as an outcry witness, to testify T.G. told her Ramos bit him. The trial court thereafter reconsidered its ruling, and instructed the jury to disregard Rose's testimony about what T.G. had told her. Ramos acknowledges he did not request a mistrial at trial. Instead, when the trial court announced it would instruct the jury to disregard this testimony, Ramos's response was, "That's fine."

Ramos contends he was not required to preserve his complaint about the denial of a mistrial on appeal because the trial court's error in admitting the evidence is incurable. When prejudice arising from trial court error is incurable, a defendant is generally "required to request a mistrial to preserve error on appeal because a mistrial would be the appropriate remedy." *See McGinn v. State*, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998). The applicability of this preservation requirement ultimately "turns on the nature of the right allegedly infringed." *Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014). Here, the nature of the right allegedly infringed is the right to exclude hearsay testimony. However, the right to exclude hearsay evidence, even when the evidence is admitted in violation of the Confrontation Clause, is a forfeitable right that must be preserved. *See id.* at 741 & n.29. We hold that even if Ramos is correct that the admission of Rose's testimony was error that could be cured only by a mistrial, he forfeited his rights by failing to request a mistrial in the trial court. *See id.*

**IMPROPER JURY ARGUMENT**

Ramos argues the trial court erred by overruling his objection to the prosecutor's closing argument. During its rebuttal in closing arguments, the State referred to Ramos's statements made on February 25, 2016, when Ramos told Officer Zachary that T.G. was not at the apartment and then changed his story. The prosecutor then stated:

> So a few minutes ago, the defense counsel said that his client stood up and said, "Not guilty." Just like he was a liar on February 25, 2016, with everything he told the police on that day, he was a liar when he stood up and said, "Not guilty."

Defense counsel immediately objected, "Your Honor, I object to that. That is my client's Constitutional right. I'm appalled that she has said that to this jury." The trial court overruled Ramos's objection. On appeal, Ramos argues the prosecutor's statement was an improper comment on his failure to testify in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution, Article I section 10 of the Texas Constitution, and article 38.08 of the Texas Code of Criminal Procedure.

Assuming Ramos's objection was sufficient to preserve the issue he raises on appeal, "[w]e review a trial court's ruling on an objection to improper jury argument for an abuse of discretion." *Rodriguez v. State*, 446 S.W.3d 520, 536 (Tex. App.—San Antonio 2014, no pet.). Jury argument may be proper if the argument answers the argument of opposing counsel. *Id.* Arguments that the defendant denied responsibility for a crime simply because he pled not guilty is generally an impermissible comment on the failure to testify. *See Randolph v. State*, 353 S.W.3d 887, 892 (2011). However, "comments about the failure to testify are permissible if they are a 'fair response' to the defendant's claims or assertions." *Id.*

During his closing, Ramos argued Garno had repeatedly lied during his testimony, stating:

> Garno . . . lied to you repeatedly. . . . [and] you-all promised me you would judge the credibility of witnesses. And I ask that – I hold you to that, that you will do that.

Now, one thing is very important. Some of you might still have that lingering thing. "Well, Michael Ramos didn't testify." You can't hold that against him at all, but Michael Ramos said something very important. He said, "I'm not guilty. I'm not guilty."

Ramos's argument at trial suggested that although he did not testify, his not guilty plea was a statement the jury should consider. Because the prosecutor's argument could reasonably be considered a "fair response" to the defense counsel's argument, we cannot say the trial court abused its discretion by overruling Ramos's objection. *See id.*

### FAILURE TO HOLD HEARING ON MOTION FOR NEW TRIAL

Ramos argues the trial court erred by not granting his request for a hearing on his motion for new trial. To preserve a complaint for appeal about the trial court not holding such a hearing, the defendant must obtain or attempt to obtain a ruling on his request for a hearing. *Perez v. State*, 429 S.W.3d 639, 644 (Tex. Crim. App. 2014). When a trial court expressly denies a motion for new trial, the trial court implicitly denies a request for a hearing. *Garcia v. State*, 291 S.W.3d 1, 9 (Tex. App.—Corpus Christi 2008, no pet.). But when "a motion for new trial is overruled by operation of law, the trial court's failure to conduct a hearing, without more, is simply a 'failure to rule' on the request for a hearing." *Oestrick v. State*, 939 S.W.2d 232, 235 (Tex. App.—Austin 1997, pet. ref'd). Here, Ramos's motion for new trial was overruled by operation of law. The trial court's failure to conduct a hearing therefore does not constitute a ruling on Ramos's request for a hearing. *See id.* Because Ramos did not obtain a ruling on his request for a hearing, this issue is not preserved for our review. *See Perez*, 429 S.W.3d at 644.

### CONCLUSION

We affirm the judgments of conviction.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH