

# NUMBER 13-14-00217-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

THEODORE JOSEPH HARDIE,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                         Appellee.

### On appeal from the Criminal District Court
### of Jefferson County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Benavides and Perkes
### Memorandum Opinion by Justice Benavides

By two issues, appellant, Theodore Joseph Hardie, challenges his conviction for

retaliation, a third degree felony.   *See* TEX. PENAL CODE. ANN. § 36.06 (West, Westlaw

through Ch. 46 R.S. 2015).   Hardie complains that: (1) the evidence was insufficient to

support his conviction, and (2) the State committed reversible error with an improper

argument during their closing argument.   We affirm.

## I.   BACKGROUND[1]

On October 10, 2012, Hardie went to the Jefferson County jail to visit his older half-brother, Elton Mims, who was incarcerated.   Prior to this visit, Mims had told another inmate named Chan Rubin of Mims's involvement in an aggravated robbery out of Hardin County.   Rubin, in turn, notified the Port Arthur Police Department regarding what he learned in the hopes of receiving some consideration relating to Rubin's present incarceration.

Based on Rubin's information and an ongoing investigation into the aggravated robbery, the Port Arthur police decided to record Mims's conversations with his visitors in the Jefferson County jail.   Detective Alton Baise set up a concealed recording device in visitation booth #13 and Mims was directed to that booth.   Mims was visited by his cousin, Brian Miller, Alexis Charles, Hardie's girlfriend, and Hardie.   During this visit, Mims discussed Rubin's disclosures to police and Mims's fear that the federal government would want to adopt the aggravated robbery case.   Mims told Hardie that if anything were to happen, Hardie needed to "get that nigger's bitch" who "works at Minnie Rogers" and "her name is Mondai."[2]   Mims then stated, "You know what I'm saying." Hardie responded, "I promise.   On my life.   On my life."   Mims responded by saying, "two faces, one tear" and "your pain is my pain."

Detective Baise recovered the recording and based on the conversation primarily

---

[1] This appeal was transferred from the Ninth Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court.   *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through Ch. 46 R.S. 2015).

[2] Both Chan and Mondai Rubin testified during trial that Mondai works at the Minnie Rodgers Juvenile Detention Center, also located in Jefferson County.

between Mims and Hardie, the police determined a threat was made towards Mondai Rubin, Chan Rubin's wife. Detective John Keith May, who was handling the investigation, notified Mondai Rubin of the threat, but told her it did not seem to be imminent. Rubin was also notified of the threat to his wife by the police and testified during the trial that he was very concerned for her safety. Following further investigation, Hardie was charged by indictment with retaliation against Rubin by threatening to harm his wife, Mondai. *See id.*

Following a jury trial, Hardie was found guilty of retaliation. *Id.* The indictment contained enhancement paragraphs for two prior felony convictions to which Hardie pled true. *See* TEX. PENAL CODE. ANN. § 12.42. Hardie was sentenced to twenty-years in the Texas Department of Criminal Justice—Institutional Division and a $10,000 fine. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

By his first issue, Hardie argues that the evidence was insufficient to meet the elements alleged in his indictment and therefore, sustain his conviction.

### A.    Standard of Review and Applicable Law

In reviewing sufficiency of evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). In viewing the evidence in

3

the light most favorable to the verdict, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. "It is also the exclusive province of the jury to reconcile conflicts in the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). It is unnecessary for every fact to point directly and independently to the guilt of the accused; it is enough if the finding of guilty is warranted by the cumulative force of all incriminating evidence. *Winfrey*, 393 S.W.3d at 768. Therefore, in analyzing legal sufficiency, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Id.* When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Id.* Direct and circumstantial evidence are treated equally in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.*

The elements of the offense are measured as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* Under a hypothetically correct jury charge, Hardie is guilty of retaliation if he

4

intentionally or knowingly harmed or threatened to harm Rubin in retaliation for and on account of the service of Rubin as a prospective witness. *See* TEX. PENAL CODE ANN. § 36.06. Harm is defined as "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested." *See id.* at § 1.07(a)(25).

**B. Discussion**

During trial, the State put on multiple witnesses to explain to the jury how the jail conversation related to the retaliation claim. Rubin testified regarding what he had learned from Mims and also what he related to the Port Arthur police. Detective Baise testified regarding his experience with recording devices and how the conversation between Mims and Hardie was recorded. Detective May also testified regarding his investigation and the subsequent investigation into Mims's alleged involvement into the aggravated robbery in Hardin County. Mondai Rubin testified that she worked at Minnie Rogers Juvenile Detention Center, was told of the threat heard on the audio tape recorded at the Jefferson County Jail, and was afraid for her safety. She also testified that her home had been burglarized after hearing of this threat. Finally, the State introduced the recording of the conversation between Mims and Hardie, as well as the video made of the jail visitation area, which shows Hardie and Mims speaking on the date in question.

It was well within the jury's province to listen to the audio and determine there was a threat made towards Mondai Rubin. It was also within the jury's province to determine that the threat made could be carried out in an effort to silence Rubin from cooperating further with any investigation into the aggravated robbery. Hardie argues there was no evidence that he intentionally or knowingly harmed or threatened to harm Chan Rubin.

5

Hardie concedes the evidence at trial related to the threats towards Rubin's wife, Mondai. However, harm can come from threatening the actual person or threatening to harm "another person in whose welfare the person affected is interested." *See Id.* at § 1.07(a)(25). It was clear from the evidence that Mims and Hardie wanted to prevent Rubin from being a prospective witness against them. They threatened a person "whose welfare [Rubin] was interested," his wife, which in turn would have caused Rubin harm. *Id.* Based on the definition of "harm" found in the penal code, the jury found that State proved the elements alleged in the indictment. *Id.* There was sufficient evidence to support the jury's finding of guilt. We overrule Hardie's first issue.

### III.   CLOSING ARGUMENTS

By his second issue, Hardie argues that the State made an improper argument during his closing argument that constituted reversible error.

### A.     Standard of Review and Applicable Law

We review a trial court's ruling on an objection to improper jury argument for an abuse of discretion. *Rodriguez v. State*, 446 S.W.3d 520, 536 (Tex. App.—San Antonio 2014, no pet.). "Such argument does not result in reversal 'unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *Id.* (citing *Wesbrook*, 29 S.W.3d at 115. "The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id.*

The "purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the admitted evidence alone." *Fant-Caughman v. State*, 61 S.W.3d 25, 28 (Tex.

App—Amarillo 2001, pet. refused).   Jury argument must fall within one of four general areas: "(1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to opposing counsel's argument; or (4) plea for law enforcement."   *Id.* (citing *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997*)).*   If any argument does not fall into one of the four categories of proper argument, it is rather a plea for abandonment of objectivity."   *Brandley v. State*, 691 S.W.2d 699, 712 (Tex. Crim. App. 1985) (en banc).

We must determine "whether to assess harm under the standard for constitutional errors or for nonconstitutional errors."   *Martinez v. State*, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000) (en banc).   "*Mosely*'s holding suggests that most comments that fall outside the areas of permissible argument will be considered to be error of the nonconstitutional variety."   *Id.* (citing *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998), *cert. denied*, 526 U.S. 1070 (1999)).   Rule 44.2(b) of the Texas Rules of Appellate Procedure "provides that a nonconstitutional error 'that does not affect substantial rights must be disregarded.'"   *Id.* (citing TEX. R. APP. P. 44.2(b)).

In evaluating the argument, we look to the factors established by the Court of Criminal Appeals.   *Franklin v. State*, 459 S.W.3d 670, 682 (Tex. App.—Texarkana 2015, pet. filed) (citing *Mosley*, 983 S.W.2d at 249).   The factors include: "(1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)."   *Id.*

### B.    Discussion

Hardie claims the State's closing argument asked the jury to take the place of the

victim and it constituted egregious error.   The error complained of is as follows:

| | |
|---|---|
| State: | That's what you know about the defendant, and you don't think he is going to try to manipulate the 12 of you to let you think this was just some innocent conversation?   Please, don't be fooled.   And if any one of you were to listen to State's Exhibit No. 1 and you heard your name and your wife or your spouse's name inserted in there --- |
| Trial Counsel: | Objection, Your Honor; that's improper to place the jury in the victim's position. |
| Court: | That's sustained. |
| Trial Counsel: | Ask the jury to disregard that comment and that argument. |
| Court: | All right.   Ladies and Gentlemen, the Court is sustaining the argument and the objection and please do not – I caution the jury do not put your place – put yourselves in the place of participants here.   You are objective determiners of the facts and you stay objective and the idea is not to sympathize subjectively with participants, but to render a determination on the facts objectively based upon the instructions the Court has given to you. |
| Trial Counsel: | We move for mistrial. |
| Court: | That's denied. |

It was improper for the prosecutor to ask the jury to place themselves in the shoes of the victim; however, the comment was quickly cut short by trial counsel's objection. *See Hinojosa v. State*, 433 S.W.3d 742, 767 (Tex. App.—San Antonio 2014, pet. ref'd). Even if we were to assume that the argument constituted error, such error would be harmless.   *Torres v. State*, 92 S.W.3d 911, 924 (Tex. App. 2002).   Assuming improper argument, "the appellant still bears the burden to prove the error affected his substantial rights."   *Hinojosa,* 433 S.W.3d at 767; TEX. R. APP. P. 44.2(b).

8

First, in evaluating the *Mosley* factors, we do not find the severity of the comments made by the State to be of a constitutional magnitude. Second, the trial court properly instructed the jury to disregard the comment and told them they must be "objective determiners of the facts" based on the instructions of the Court. Third, even though Hardie claims this one comment led to his maximum sentence conviction, the threat was on audio for the jury to hear, the persons threatened testified during trial of their fear, and Hardie pled true to two enhancement paragraphs in the indictment. All of those reasons alone could have led the jury to assess the punishment given in this case. The prosecutor's comments were only a small portion of the closing argument and the prosecutor moved on from his argument, not reiterating the objected-to statements. The error was minor and did not rise to an egregious level warranting a new trial. Hardie's second issue is overruled.

## IV. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
31st day of August, 2015.