FILED IN
COURT OF CRIMINAL APPEALS

December 18, 2015

ABEL ACOSTA, CLERK

PD-1478-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/16/2015 1:26:12 PM
Accepted 12/18/2015 11:57:12 AM
ABEL ACOSTA
CLERK

## NO. PD-1478-15

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS
# AUSTIN, TEXAS

| | | |
|---|---|---|
| **DENNIS ROY REDDING** | § | **APPELLANT** |
| | § | |
| **VS.** | § | |
| | § | |
| **THE STATE OF TEXAS** | § | **APPELLEE** |

---

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

### NO. 01-14-00536-CR
### IN THE COURT OF APPEALS FOR THE FIRST DISTRICT

---

### APPEAL FROM CAUSE NO. 12CR2363
### IN THE 212ᵀᴴ DISTRICT COURT
### OF GALVESTON COUNTY, TEXAS

---

**STANLEY G. SCHNEIDER**
**SCHNEIDER & McKINNEY, P.C.**
**TBC NO. 17790500**
**440 LOUISIANA, SUITE 800**
**HOUSTON, TEXAS 77002**
**713-951-9994 (OFFICE)**
**713-224-6008 (FAX)**
**STANS3112@AOL.COM (EMAIL)**

**ATTORNEY FOR APPELLANT**

# IDENTITY OF PARTIES

The following is a complete list of all parties to the trial court's judgment, and the names and addresses of all trial and appellate counsel:

Dennis Roy Redding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appellant

State of Texas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appellee

Stanley G. Schneider . . . . . . . . . . . . . . . . Appellant's Retained Counsel at Trial
440 Louisiana, Suite 800
Houston, Texas 77002

Casey Gotro . . . . . . . . . . . . . . . . . . . . . . . Appellant's Retained Counsel at Trial
440 Louisiana, Suite 800
Houston, Texas 77002

Jennifer Ott. . . . . . . . . . . . . . . . . . . . . . . . . Assistant District Attorney at Trial
600 59th Street, Suite 1001
Galveston, Texas 77551

William D. Reed . . . . . . . . . . . . . . . . . . . . . . Assistant District Attorney at Trial
600 59th Street, Suite 1001
Galveston, Texas 77551

Stanley G. Schneider . . . . . . . . . . . . . . . . Appellant's Retained Counsel on Appeal
440 Louisiana, Suite 800
Houston, Texas 77002

Jack Roady. . . . . . . . . . . . . . . . . . . . . . . . . . . . District Attorney on Appeal
600 59th Street, Suite 1001
Galveston, Texas 77551

Hon. Bret Griffin . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Trial Judge

# TABLE OF CONTENTS

IDENTITY OF PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT CONCERNING ORAL ARGUMENT.. . . . . . . . . . . . . . . . . . . . iii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . 1

GROUND FOR REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

> Whether the Court of Appeals erred in determining that the voluntary intoxication instruction submitted the trial court adequately informed the jury that the State retained the burden to prove all of the elements of the offense charged without a specific application paragraph when the jury is instruction that intoxication is not a defense to the offense charged.

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

REASONS FOR GRANTING REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**STATEMENT CONCERNING ORAL ARGUMENT**

The Appellant request oral argument in this case as the issues are complex and oral argument would benefit this Court to help Clarify any issues the Court may have.

# INDEX OF AUTHORITIES

**CASE**                                                                             **PAGE**

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984). . . . . . . . . . . . . . . . . 10

*Davis v. State*, 313 S.W.3d 317 (Tex. Crim. App. 2010). . . . . . . . . . . . . . . . . . 6, 7

*Delgado v. State*, 235 S.W.3d 244 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . 6

*Druery v. State*, 225 S.W.3d 491 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . 10

*Ex parte Chandler*, 719 S.W.2d 602 (Tex. Crim. App. 1986). . . . . . . . . . . . . . . 7

*Gray v. State*, 152 S.W.3d 125 (Tex. Crim. App. 2004). . . . . . . . . . . . . . . . . . . 6, 7

*Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997). . . . . . . . . . . . . . . . . . 7

*Plata v. State*, 926 S.W.2d 300 (Tex. Crim. App. 1996). . . . . . . . . . . . . . . . . . 7

*Raby v. State*, 970 S.W.2d 1 (Tex. Crim. App. 1998). . . . . . . . . . . . . . . . . . . . . 7

*Ramos v. State*, 547 S.W.2d 33 (Tex. Crim. App. 1977). . . . . . . . . . . . . . . . . . 7

*Reeves v. State*, 420 S.W.3d 812 (Tex. Crim. App. 2013). . . . . . . . . . . . . . . . . 11

*Sakil v. State,* 287 S.W.3d 23 (Tex. Crim. App. 2009). . . . . . . . . . . . . . . . . . passim

*Taylor v. State*, 885 S.W.2d 154 (Tex. Crim. App. 1994). . . . . . . . . . . . . . . . . 5, 6

*Vasquez v. State*, 389 S.W.3d 361 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . 7

*Yzaguirre  v. State*, 394 S.W.3d 526 (Tex. Crim. App. 2013). . . . . . . . . . . . . . . 7

## STATUTES AND RULES

TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). . . . . . . . . . . . . . . . . . . . . . . 6

TEX. PENAL CODE ANN. § 8.04. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

TEX. R. APP. P. 9.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

TEX. R. APP. P. 9.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

TEX. R. APP. P. 68. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13

## OTHER

Comm. on Pattern Jury Charges, State Bar of Tex., Texas Criminal Pattern Jury Charges: Defenses § B6.3 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**TO THE HONORABLE JUSTICES OF THE COURT OF CRIMINAL APPEALS:**

NOW COMES, **DENNIS ROY REDDING**, Appellant by and through his attorney of record, **STANLEY G. SCHNEIDER**, files this Petition for Discretionary Review pursuant to TEX. R. APP. P. 68. In support of his petition, Appellant will show this Honorable Court the following:

## STATEMENT OF THE CASE

Appellant Dennis Roy Redding was charged by indictment in cause number 12CR2363 with the first degree felony offense of murder, alleged to have occurred on June 23, 2012. CR6. Appellant entered a plea of not guilty and a jury found him guilty of the lesser-included offense of manslaughter. CR73. The jury assessed his punishment at 7 years imprisonment. CR138. Appellant filed a motion for new trial, which was overruled by operation of law. CR157. This appeals follows.

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals affirmed Appellant's conviction in an opinion issued on October 15, 2015. A copy of the opinion is attached as Appendix A. No motion for rehearing was filed. This Court granted a motion to extend time to file this petition for discretionary review to December 16, 2015.

1

## GROUND FOR REVIEW

**Whether the Court of Appeals erred in determining that the voluntary intoxication instruction submitted the trial court adequately informed the jury that the State retained the burden to prove all of the elements of the offense charged without a specific application paragraph when the jury is instruction that intoxication is not a defense to the offense charged.**

## STATEMENT OF FACTS

The uncontradicted facts are that on June 23, 2012, Appellant's best friend of 25 years died when the handgun he was holding went off after a day of drinking. The issue presented to the jury was whether the shooting was an accident or whether he was guilty of any criminal offense. While accident is not a defense in Texas, this Court has stated that an accident occurs when a person acts without a culpable mental state attached to his actions.

The evidence reflects that Mark Holcomb, the complainant, met Appellant when their daughters became friends as children. 3RR22. For 25 years, the two men traveled together, fished together, hunted together and drank together. Appellant's wife worked for Holcomb for many years. 3RR22, 82. During visits and vacations, Holcomb and Appellant often drank heavily and engaged in horseplay. 3RR81.

On Friday, June 22, 2012, Mark and Francine Holcomb went to their weekend waterfront home in the gated community of Harborwalk in Hitchcock, Texas. 3RR31.

2

They had invited Appellant and his son-in-law Darren Schieffer to stay at the house and go fishing on Saturday in Mark Holcomb's boat. 3RR32. Mark Holcomb met Appellant and Schieffer at the house around 3:00 p.m. and Francine arrived around 5:00 p.m. 3RR41. The men prepared for the fishing trip while Francine cooked dinner. 3RR42-43. Holcomb and Appellant began drinking upon their arrival. Holcomb drank beer and gin/tonic while Appellant drank whiskey and coke. 3RR43, 160; 4RR13. Holcomb and Appellant spent a lot of time reminiscing about prior trips. 4RR77. The group continued to drink until sometime after midnight.

The shooting occurred as the complainant tried to get Appellant to bed. Immediately after the gunshot, family members and guests converged on the scene. Jonathon Contois saw Holcomb holding his side and saying, "Call 911, he shot me"; "it was an accident"; and "he didn't mean to do it." 3RR136, 169. Multiple witnesses stated that the Complainant repeatedly stated that Appellant did not mean to do it and that the shooting was an accident. When Francine arrived Holcomb was calmly lying on the floor and told her that it was an accident. 3RR55. Francine saw several men holding Appellant's hands behind his back and punching him. 3RR95-96. Francine stated, "Stop, that's Mark's friend, stop." 4RR46. Jeffrey Dolen heard Appellant say, "Let me up. It was an accident. Let me up." 4RR234.

It became apparent that the gunshot wound would likely have been survivable

3

if not for a significant delay in medical treatment. 5RR77, 84. The paramedics were dispatched at 12:57 a.m. but Holcomb did not arrive at the hospital until 2:15 a.m. 4RR13136, 170; 5RR48. The delay was caused by the remoteness of the location and the paramedics' lack of equipment needed to transport Holcomb down the stairs. 4RR143-144. Holcomb was alert and oriented when he arrived at the hospital and disclosed to the staff that the shooting was an accident. 5RR52, 55. Holcomb underwent surgery but died from blood loss at 5:22 a.m. 5RR23, 46-47.

## REASONS FOR GRANTING REVIEW

The Court of Appeals opinion conflicts with established precedent by this Court and has decided an important question of law that needs to be addressed by this Court. The issue presented is that when a voluntary intoxication instruction is submitted at the request of the State, must there be an application paragraph submitted that reminds the jury that the fact that if evidence is presented that an accused might have been intoxicated, the fact of the intoxication does not negate the State's burden to prove that the accused acted with the requisite culpable mental status required to convict.

In this case, the jury was instructed on voluntary intoxication at the request of the State, 8RR4, that tracked the language of § 8.04 of the Penal Code:

4

> Voluntary intoxication does not constitute a defense to the commission of a crime. Intoxication means disturbance to mental or physical capacity resulting from the introduction of any substance into the body.

Appellant objected to the instruction and requested the following application paragraph:

> Evidence of the defendant's intoxication, if any, does not negate the elements of intent or knowledge or recklessly or the State's burden to prove the defendant's intent, knowledge or recklessness, as those terms has [sic] been defined, beyond a reasonable doubt.

8RR10. The trial court overruled the objection and denied the requested instruction.

8RR9-10. Appellant requested the instruction was based on this Court's decision in *Sakil v. State,* 287 S.W.3d 23 (Tex. Crim. App. 2009).

Appellant argued in the Court of Appeals that the evidence did not warrant the submission of the instruction because no one contradicted the fact of his intoxication or claimed his intoxication excused his conduct. The court of appeals concluded that the instruction is appropriate if evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions. (Slip opinion p. 7). The Court of Appeals also concluded that there was no need for an application paragraph associated with the voluntary intoxication instruction.

As noted by the Court of Appeals, TEX. PENAL CODE ANN. § 8.04 (a) has been interpreted to mean that evidence of voluntary intoxication "will not excuse a defendant's actions," *Taylor v. State*, 885 S.W.2d 154, 156 (Tex. Crim. App. 1994),

or "rebut a defendant's mental culpability." *Davis v. State*, 313 S.W.3d 317, 329–30 (Tex. Crim. App. 2010). And an accused need not expressly rely upon intoxication as a defense in order to implicate this provision. *Taylor* at 158.

In *Taylor*, this Court did not hold that the instruction is permissible whenever there is evidence of intoxication; instead, the evidence must be such that a jury could infer that it excused the conduct. In this case, while not conceding the appropriateness of the instruction, the submission of the instruction required that the jury to understand that the instruction did not negate the State's responsibility to prove a culpable mental state especially in light of the complainant's statement that Appellant's conduct was an accident.

The trial court's charge must fully instruct the jury on the law applicable to the case and apply that law to the facts adduced at trial. *Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004); see TEX. CODE CRIM. PROC. ANN. art. 36.14. The importance of an instruction explaining the application the abstract law to the facts cannot be overstated. The purpose of the jury charge is to instruct the jury on the law that applies to the case and to guide the jury in applying the law to the facts of the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). Abstract or definitional paragraphs serve as a kind of glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge.

6

*Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *rev'd on other grounds*, *Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997). But the application paragraph is the "heart and soul" of the jury charge. *Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012). "The application paragraph is what explains to the jury, in concrete terms, how to apply the law to the facts of the case." *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex. Crim. App. 2013). "The jury must be instructed 'under what circumstances they should convict, or under what circumstances they should acquit.'" *Ex parte Chandler*, 719 S.W.2d 602, 606 (Tex. Crim. App. 1986). Jury charges which fail to apply the law to the facts adduced at trial are erroneous. *Gray v. State*, 152 S.W.3d 125, 127–28 (Tex. Crim. App. 2004).

Section 8.04 of the Penal Code provides that "[v]oluntary intoxication is not a defense to the commission of a crime." TEX. PENAL CODE ANN. 8.04(a). The statute has been interpreted as barring the use of evidence of voluntary intoxication to negate, rebut, or disprove the culpable mental state of a crime. *Davis v. State*, 313 S.W.3d 317, 329-30 (Tex. Crim. App. 2010); *Ramos v. State*, 547 S.W.2d 33, 33–34 (Tex. Crim. App. 1977). But evidence of intoxication does not relieve the State of its burden of proving beyond a reasonable doubt the requisite mental state. *Raby v. State*, 970 S.W.2d 1, 5 (Tex. Crim. App. 1998). In *Raby,* the defendant asserted that a § 8.04(a) instruction unconstitutionally shifted the burden on the element of

7

criminal intent. *Id.* Rejecting this argument, the Court clarified that "the State is required to specifically prove, beyond a reasonable doubt, that a defendant intended to commit murder, regardless of any state of intoxication." *Id.* at 4-5.

The proper application of the provision is described in detail in *Sakil*, where the Court rejected the lower court's conclusion that the instruction created a mandatory presumption that an intoxicated person has the requisite mental state, relieving the State of its burden. The Court explained that the State's burden remains in place regardless of evidence of intoxication:

> If anything, a voluntary-intoxication instruction acts to reaffirm the mental-state requirements, not delete them. "[E]vidence of [an] appellant's intoxication, if any, does not negate the elements of intent or knowledge"; and, therefore, when the evidence suggests that a defendant acted under the influence of a substance, the instruction operates to inform the jury that the elements of the offense, including the requisite mental state, are not affected by any evidence of intoxication. In this case, the instruction prevented evidence of Appellant's possible intoxication from altering the jury's understanding of the crime with which he was charged: "intentionally, knowingly, or recklessly" causing "bodily injury to another."

*Sakil,* 287 S.W.3d at 28 (internal citations omitted). Accordingly, proper application of § 8.04 (a) requires the jury to understand that evidence of intoxication may not serve to negate the mental state elements, but the State must prove the requisite mental state beyond a reasonable doubt, regardless of evidence of intoxication. *Id.* Appellant's requested instruction was derived from *Sakil*'s

articulation of the proper application of § 8.04(a).

Simply instructing the jury that voluntary intoxication "does not constitute a defense to the commission of a crime" does not inform the jury of the interplay between evidence of intoxication and the State's burden on the requisite mental state. For this reason, the State Bar of Texas Committee on Pattern Jury Charges has included an explanatory application instruction in its criminal pattern jury charge:

> Voluntary intoxication is not a defense to the commission of a crime.
>
> But you are reminded that the state must prove all elements of the offense beyond a reasonable doubt.
>
> *See* Comm. on Pattern Jury Charges, State Bar of Tex., Texas Criminal Pattern

Jury Charges: Defenses § B6.3 (2013).

Moreover, the *Sakil* Court's suggestion that the statutory language suffices to convey to the jury the proper application of the abstract law is wholly incongruous with its analysis. The Court's explanation of the application of the law in relation to the State's burden on mental state necessitated an entire paragraph, and yet the Court suggests that a jury of lay persons will infer all of the content of its explanation by simply being informed that voluntary intoxication is "not a defense."

The error in this case is even more pervasive because it implicated the legal validity of the entire defense case. The language "voluntary intoxication is not a defense to the commission of a crime" has acquired an established legal meaning, and

9

is subject to misapplication if given a broad meaning used in common parlance. The statutory language does nothing to explain to the jury in concrete terms how evidence of voluntary intoxication impacts its evaluation of the State's case, and implies that there was no viable defense if Appellant was voluntarily intoxicated at the time of the alleged offense. The trial court erred in failing to submit Appellant's requested instruction, or some portion thereof, explaining that the "not a defense" language did not negate the State's burden of proving each element of the offense beyond a reasonable doubt.

Because Appellant preserved his complaint, the Court must reverse if the error resulted in any harm, regardless of degree. *Almanza v. State*, 686 S.W.2d 157, 161 (Tex. Cr. App. 1984); *Druery v. State*, 225 S.W.3d 491, 504 (Tex. Crim. App. 2007). The *Almanza* factors, set out above in Part A, favor a finding of harm.

With regard to the jury charge as a whole, the charge included an instruction stating that the State has the burden of proving each element beyond a reasonable doubt. CR68. But this instruction appeared several pages after the voluntary intoxication instruction, in the boilerplate section of the charge. The voluntary intoxication instruction immediately preceded the application paragraphs for murder, manslaughter, and deadly conduct (CR65-67), making it more likely that the jury was drawn to the voluntary intoxication instruction deciding whether to convict. *See*

*Reeves v. State*, 420 S.W.3d 812, 819 (Tex. Crim. App. 2013) (physical location of erroneous instruction is a factor in evaluating harm).

Moreover, the boilerplate instruction on the State's burden of proof was not sufficient to explain the interplay between evidence of intoxication and the State's burden of proof. The jury was authorized to apply a broad interpretation of the term "defense" which would permit it to find that any conduct engaged in while intoxicated was legally indefensible, regardless of whether the defendant had the requisite mental state. Because the § 8.04(a) instruction was the only instruction relating to defenses, and no instruction concerning "accident" was required, the charge as a whole created a risk that the jury would conflate Appellant's defense of accident with the evidence of intoxication and find that the instruction foreclosed a finding that the shooting was accidental. Moreover, the only way the jury could give effect to the defense of accident was through its evaluation of proof of the requisite mental state. In the absence of an instruction correctly informing the jury that the § 8.04(a) instruction did not negate the State's burden to prove a culpable mental state, the jury could not give effect to the evidence that the shooting was accidental.

The State took advantage of the instruction by repeatedly mentioning Appellant's intoxication in relation to the shooting during closing arguments. 8RR18-20. Additionally, the State's voir dire implied that simply handling a gun

while intoxicated is enough to create criminal responsibility for any ensuing conduct, unless "somebody drugged you against your will". 2RR47-50. In the context of explaining that intoxication was not a defense, the State questioned the panel about whether guns and alcohol "don't mix, period" or "you just shouldn't do it" and elicited agreement from numerous panel members. 2RR48-50.

Thus, this Court should grant discretionary review to determine if an application is required to explain the interplay between a § 8.04 instructions and the State's burden of proof.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Appellant prays that this grant discretionary review, reverse the decision of the Court of Appeals and remand the cause to the trial court for a new trial.

Respectfully Submitted,

SCHNEIDER & McKINNEY, P.C.

/s/ STANLEY G. SCHNEIDER
STANLEY G. SCHNEIDER
T.B.C. No. 17790500
440 Louisiana St., Suite 800
Houston, Texas 77002
Office: (713) 951-9994
Fax: (713) 224-6008
Email: stans3112@aol.com

ATTORNEY FOR APPELLANT

12

**CERTIFICATE OF SERVICE**

Pursuant to TEX. R. APP. P. 9.5, a copy of this document has been served to the following attorneys for the State and the State Prosecuting Attorney by electronic service, as required by TEX. R. APP. P. 68.11, on December 16, 2015:

- Jack Roady – jack.roady@co.galveston.tx.us
  Galveston County District Attorney

- Lisa C. McMinn – information@spa.texas.gov
  State Prosecuting Attorney

/s/ STANLEY G. SCHNEIDER
STANLEY G. SCHNEIDER

**CERTIFICATE OF COMPLIANCE**

Pursuant to TEX. R. APP. P. 9.4(i)(3), I certify that the above brief was computer generated and contains 2,735 words excluding those portions set out in TEX. R. APP. P. 9.4(1)(1).

/s/ STANLEY G. SCHNEIDER
STANLEY G. SCHNEIDER

**APPENDIX A**
**Court of Appeals' Opinion**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00536-CR

———————————

## DENNIS ROY REDDING, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

### On Appeal from the 212th District Court
### Galveston County, Texas
### Trial Court Case No. 12-CR-2363

---

### MEMORANDUM OPINION

Appellant Dennis Roy Redding was indicted for the first degree felony offense of murder and was convicted of the lesser included offense of manslaughter. Redding raises three issues on appeal. First, he contends that the trial court erred by submitting a voluntary intoxication instruction pursuant to

Penal Code section 8.04(a) because he did not rely on voluntary intoxication as a defense. Second, he contends that the trial court erred by failing to include Redding's proposed application paragraph. Finally, Redding asserts that the trial court erred in overruling his objections to the State's comments during closing argument in which the prosecutor allegedly told the jury that to be convicted of murder, Redding merely had to intend to engage in conduct rather than intend a result. Finding no error, we affirm.

## Background

Redding and Mark Holcomb, the complainant, were longtime friends who met when their daughters were in elementary school, then became closer when Redding's wife, Joan, went to work for Holcomb. On June 22, 2012, Redding and his son-in-law, Darren Schieffer, joined Holcomb and his wife Francine at the Holcombs' waterfront home for the weekend. The Holcombs' daughter Ashley, Ashley's husband Jonathan (John) Contois, and John's brother Dan Contois were also there.

Holcomb and Redding began drinking sometime before 5:00 p.m. They continued to drink outside while dinner was being prepared. The group, except Redding, ate dinner around 8:00 p.m. After dinner, everyone gathered outside and continued socializing and drinking. Holcomb and Redding remained as the rest of the group gradually dispersed to go to bed.

2

Around 9:30 p.m., neighbors Gert Rhodes, David Baggs, and Jeff Dolen joined Holcomb and Redding, and Francine came back downstairs. The group continued to drink and socialize until sometime after midnight. Then, with the help of Rhodes and Baggs, Holcomb assisted Redding upstairs to bed.

Once upstairs, Holcomb stood in the doorway as Redding entered the bedroom where Darren was already sleeping. Redding stumbled, falling into the wall. He then pulled his bag out and began to rummage through it. Holcomb turned on the light and asked Redding what he was looking for. Darren awakened and sat up, and Redding yelled at Holcomb to "turn the fucking light off." Redding then walked toward the doorway pointing his handgun at Holcomb while saying, "you mother fuckers are treating me like a baby." As Redding approached Holcomb, Redding fired the gun. Holcomb grabbed his stomach and fell to the floor saying, "Dennis you shot me."

Darren ran to where John had been sleeping on the couch and told him that Redding shot Holcomb. John ran into the bedroom to subdue Redding while Darren called 911. Family members and guests then converged on the scene, and Holcomb was holding his side and saying, "Call 911, he shot me"; "it was an accident"; and "he didn't mean to do it." Darren and John restrained Redding and found the gun in Redding's left pocket. They overheard Redding saying, "Let me up. It was an accident, let me up." While awaiting EMS, Holcomb again told

3

Francine "it was an accident." Both the EMS and police arrived and Holcomb was taken by life flight to the UTMB. Holcomb underwent surgery, but died from blood loss early that morning.

At trial, Darren testified that Redding told him that he never meant to kill Holcomb, but that he was just trying to scare Holcomb by shining the gun's laser on him. Redding believed the laser was trigger-activated, but, in fact, the gun had a button on the grip to activate the laser. Darren testified he is familiar with guns and does not know of any gun that has a trigger-activated laser.

Trial testimony also revealed that Redding was familiar with firearms. Redding was a former Houston police officer and was previously the head of security at NASA. Redding also hunted regularly, was a concealed handgun license holder, practiced shooting at a gun range, and typically carried a gun with him.

The jury charge during the guilt-innocence phase of trial included instructions on murder and two lesser included offenses: manslaughter and deadly conduct. Over Redding's objection, the trial court submitted the following instruction on voluntary intoxication, which tracked Texas Penal Code § 8.04(a) and (d):

> Voluntary intoxication does not constitute a defense to the commission of a crime.

4

Intoxication means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

The trial court also refused Redding's proposed application paragraph which he contended was needed to inform the jury that a finding of voluntary intoxication by the defendant does not negate the State's burden to prove all elements of the offense.

The jury convicted Redding of the lesser included offense of manslaughter, found the deadly weapon special instruction true, and sentenced Redding to seven years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

## Jury Charge

Redding argues that the trial court's charge contained two errors. In his first issue, he argues that the trial court erroneously instructed the jury on voluntary intoxication. In his second issue, he argues that the trial court erred in failing to include an application paragraph with the voluntary intoxication instruction. He asserts that he preserved these errors, and they caused some harm, warranting reversal.

## A.    Standard of Review

In analyzing a jury-charge issue, our first duty is to decide if error exists. *See Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g); *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet.

ref'd). Only if we find error do we then consider whether an objection to the charge was made and analyze for harm. *Tottenham*, 285 S.W.3d at 30; *see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal.").

"The degree of harm necessary for reversal depends upon whether the error was preserved." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). Error properly preserved by a timely objection to the charge will require reversal "as long as the error is not harmless." *Almanza*, 686 S.W.2d at 171. The Court of Criminal Appeals has interpreted this to mean that *any* harm, regardless of degree, is sufficient to require reversal. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). However, when the charging error is not preserved "and the accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza*, 686 S.W.2d at 171.

## B.    Applicable Law

An instruction on voluntary intoxication informs the jury that the elements of the offense—including the requisite mental state—are not affected or altered by evidence of intoxication. *Sakil v. State*, 287 S.W.3d 23, 28 (Tex. Crim. App. 2009). The Court of Criminal Appeals has held that a voluntary intoxication

6

instruction is appropriate if evidence from any source might lead a jury to conclude that the defendant's intoxication somehow excused his actions. *Taylor v. State*, 885 S.W.2d 154, 158 (Tex. Crim. App. 1994). The Court has expressly rejected the argument that such an instruction relieves the State of its burden of proving intent, *Sakil*, 287 S.W.3d at 28, noting that, if anything, the instruction acts to reaffirm the mental state requirements, not delete them. *Id.*

## C. Analysis

### 1. *Voluntary intoxication instruction*

In his first point of error, Redding asserts that the trial court erred by instructing the jury on voluntary intoxication at the State's request. Specifically, Redding maintains that the instruction was not warranted because there was neither evidence nor argument that his intoxication was not voluntary or that it caused or excused his conduct.

Under *Almanza*, our first duty is to determine whether there was error in the charge. We conclude that there was not. In *Taylor*, the Court stated that a section 8.04(a) instruction is appropriate if evidence from any source might lead a jury to conclude that the defendant's intoxication somehow excused his actions. *Taylor*, 885 S.W.2d at 158; *see also Fisher v. State*, 397 S.W.3d 740, 746–47 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (voluntary intoxication instruction appropriate where equivocal testimony might have led jury to conclude that

7

voluntary intoxication excused appellant's actions). The instruction may be appropriate even if the defense does not argue that intoxication somehow excused an accused's conduct and even if evidence of intoxication is itself equivocal. *Sakil*, 287 S.W.3d at 27–28.

In *Sakil*, the defendant elicited testimony from his own witness regarding defendant's history of drug abuse, and that history was suggested to have some link to the appellant's symptoms on the date of the offense. *Id.* at 27. Despite the complainant telling emergency dispatchers the defendant was not intoxicated at the time of the offense, the trial court concluded that testimony on defendant's history of drug use alone increased the possibility the jury would infer a cause-and-effect relationship between defendant's history of drug use and the offense conduct. *Id.* The Court of Criminal Appeals explained that although the evidence did not establish that the appellant was intoxicated at the time of the offense, there was some evidence from which a juror could conclude that voluntary intoxication excused appellant's actions. *Id.* Thus, a voluntary intoxication instruction was appropriate as it "properly utilized the charge's function to actively prevent confusion." *Id.* at 28.

This case is similar. Here, there was considerable evidence of Redding's intoxication. Francine testified that Redding and Holcomb had a longstanding history of drinking heavily together while on vacation. John described Redding as

8

"pretty drunk" at dinnertime, around 8:00 p.m., and Francine testified that Redding continued to drink downstairs for a few hours and was very intoxicated. Darren recalled that appellant was "drunk … stumbling everywhere" when appellant came upstairs right before the shooting. The uncontroverted testimony provided evidence from which a juror could conclude that intoxication excused Redding's actions. Accordingly, the trial court did not err in including a voluntary intoxication instruction. *Taylor*, 885 S.W.2d at 158 (voluntary intoxication instruction appropriate where evidence from any source might lead jury to conclude that defendant's intoxication somehow excused his actions even if defendant has not explicitly argued intoxication as a defense); *Sakil*, 287 S.W.3d at 26–28 (voluntary intoxication instruction appropriate even if evidence of intoxication is equivocal in order to actively prevent confusion).

We overrule appellant's first issue.

### 2. *Omission of application paragraph*

In his second point of error, Redding contends that the trial court erred in refusing an application paragraph regarding voluntary intoxication. Specifically, Redding argues that the voluntary intoxication instruction could have misled the jury into thinking that Redding was strictly liable if the jury found voluntary intoxication.

Redding asked the trial court to include the following application paragraph:

9

Evidence of the defendant's intoxication, if any, does not negate the elements of intent or knowledge or recklessly or the State's burden to prove the defendant's intent, knowledge or recklessness as those terms has [sic] been defined beyond a reasonable doubt.

We conclude that the trial court did not err in refusing to submit the proposed application paragraph. We read *Sakil* and other authorities to mean that a trial court does not err in failing to submit an application paragraph with a voluntary intoxication instruction. *See, e.g.*, *Taylor*, 885 S.W.2d at 158 (abstract voluntary intoxication instruction without a related application instruction not noted as error where charge indicated burden of production remained with the State); *Sakil*, 287 S.W.3d at 28 (concluding that abstract voluntary intoxication instruction "operates to inform the jury that the elements of the offense, including the requisite mental state, are *not* affected by any evidence of intoxication" (citing *Hawkins v. State*, 605 S.W.2d 586, 589 (Tex. Crim. App. 1980))); *Hughes v. State*, No. 01-11-00282-CR, 2012 WL 2923180, *4 (Tex. App.—Houston [1st Dist.] July 12, 2012, pet. ref'd) (mem. op., not designated for publication) (abstract voluntary intoxication instruction without a related application instruction operated to prevent juror confusion and was not noted as error). "If anything, a voluntary-intoxication instruction acts to reaffirm the mental-state requirements, not delete them. . . . [T]he instruction operates to inform the jury that the elements of the offense, including the requisite mental state, are *not* affected by any evidence of

intoxication." *Sakil*, 287 S.W.3d at 28 (citing *Hawkins*, 605 S.W.2d at 589); *see also Raby v. State*, 970 S.W.2d 1, 5 (Tex. Crim. App. 1998) (concluding that a section 8.04(a) instruction suffers no constitutional infirmity and does not improperly benefit the State by shifting the burden on the requisite element of criminal intent).

Here, the charge instructed the jury that the State maintained its burden of proving the required mental state beyond a reasonable doubt. The general instructions stated: "[a]ll persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt." The next paragraph reinforced the idea that the State bore the burden of production on each and every element: "[t]he prosecution has the burden of proving the Defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the Defendant." Thus, the charge included the substance of the proposed application paragraph that Redding argues should have been submitted, albeit not immediately after the voluntary intoxication instruction as Redding wished. *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Criminal Pattern Jury Charges: Defenses* § B6.3 (2013) (suggesting voluntary intoxication instruction tracking Penal Code section 8.04(a) be accompanied by an instruction

11

that "you are reminded that the state must prove all elements of the offense beyond a reasonable doubt.").

We conclude that the charge adequately informed the jury that the State retained the burden to prove all elements beyond a reasonable doubt. Accordingly, the trial court did not abuse its discretion in refusing Redding's proposed application paragraph.

We overrule appellant's second issue.

## Closing Arguments

In his third issue, Redding argues that the trial court erred in overruling his objections to the State's closing arguments, which he maintains incorrectly led the jury to believe that murder was a nature of conduct rather than result of conduct offense.

## A. Standard of Review

A trial court's ruling on an objection to improper jury argument is reviewed for abuse of discretion. *Rodriguez v. State*, 446 S.W.3d 520, 536 (Tex. App.—San Antonio 2014, no pet.). Prosecutorial misstatements of law are improper, but they are not constitutional in nature, and are governed by the harm analysis set out in Texas Rule of Appellate Procedure 44.2(b). *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Nonconstitutional errors are disregarded unless appellant's substantial rights are affected. *Herrera v. State*, 11 S.W.3d 412, 415

(Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). A substantial right is affected when error has a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

To determine whether the prosecutor's misstatement of the law in closing argument to the jury had a substantial and injurious effect, a reviewing court must look at all the evidence and the court's charge. *Herrera*, 11 S.W.3d at 415. The court does not consider only isolated statements when reviewing for error. *Rodriguez v. State*, 90 S.W.3d 340, 364 (Tex. App.—El Paso 2001, pet. ref'd).

## B. Applicable Law

To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010). When an argument exceeds the permissible bounds, it does not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statue, or injects new facts harmful to the accused into the trial proceeding. *Todd v. State*, 598 S.W.2d 286, 296–97 (Tex. Crim. App. [Panel Op.] 1980) (first citing *Kerns v. State*, 550 S.W.2d 91 (Tex. Crim. App. 1977); then citing *Thompson v. State*, 480 S.W.2d 624 (Tex. Crim. App. 1972)).

## C. Analysis

Redding contends that portions of the State's closing argument misstated the law by improperly directing the jury to focus on Redding's "acts" on the night of the shooting. In particular, during closing argument, the prosecutor told the jury:

> The issue for you, ladies and gentlemen, is has the State proven murder? Has the State proved intentionally or knowingly acts? What I want you to focus on are the acts.

Redding objected, "That's a misstatement of the law. It's intentionally or knowingly cause the result, not that he engaged in conduct." The trial court overruled Redding's objection.

The prosecutor continued, later arguing:

> When you focus on the actions of the defendant in this case from walking up to that bedroom, rummaging around in the bag, taking the gun out of the holster, his gun, the gun he's familiar with, the retired police officer with the CHL, his gun and he pulls the trigger after taking several steps forward, those are all, ladies and gentlemen, intentional, knowing, those are purposeful actions.

Redding objected:

> Your Honor, I object. The jury charge says the conduct that caused the result, not that he engaged in conduct. That's not part of the intentional and knowing. It's a misstatement of the law that applies to this case by saying if you find he engaged in conduct. That's not the law.

The trial court again overruled the objection.

Even assuming the arguments complained of were improper and that the trial court erred in overruling the objections, we find no substantial or injurious effect

14

or influence. TEX. R. APP. P. 44.2(b). Determining harm under the standard for nonconstitutional error in improper argument cases requires balancing the following three factors: (1) severity of the misconduct (prejudicial effect); (2) curative measures (the efficacy of any cautionary instruction by the judge); and (3) the certainty of the conviction absent the misconduct (the strength of the evidence supporting the conviction). *Mosley*, 983 S.W.2d at 259 (first citing *United States v. Millar*, 79 F.3d 338, 343 (2nd Cir. 1996); then citing *United States v. Palmer*, 37 F.3d 1080, 1085 (5th Cir. 1994)).

First, considering the severity of the misconduct, we conclude that the State's comments were not manifestly improper. Consideration of the State's entire closing argument shows that the State was properly asking the jury to evaluate Redding's intent by focusing on his actions that night. Notwithstanding the fact that murder is a result of conduct offense, a fact finder may infer that a particular result was intended based on a defendant's acts. *See Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003) (explaining that while intent to kill cannot be inferred as a matter of law, a jury may infer intent based on any facts in evidence which it determines prove the existence of an intent to kill); *Ex parte Weinstein*, 421 S.W.3d 656, 668 (Tex. Crim. App. 2014) (explaining that intent to commit murder may be inferred from circumstantial evidence, including the accused's acts and words); *Holiday v. State*, 14 S.W.3d 784, 789–90 (Tex. App.—

15

Houston [1st Dist.] 2000, pet. ref'd) (factfinder may infer intent to kill from the use of a deadly weapon). The arguments did not invite speculation, *Thompson v. State*, 89 S.W.3d 843, 850–51 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (argument inviting speculation clearly improper and amounted to constitutional error), did not inject new facts into the record, *Everett v. State*, 707 S.W.2d 638, 641 (Tex. Crim. App. 1986) (prosecutor may not use closing argument to place matters outside the record before the jury), and did not cast aspersion on defense counsel's veracity, *Cole v. State*, 194 S.W.3d 538, 544 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (comments impugning defense counsel's veracity in closing arguments may constitute reversible error). Instead, the arguments complained of permissibly encouraged reasonable deductions from the evidence. Additionally, the jury concluded that Redding did not intentionally or knowingly cause Holcomb's death. Instead, the jury found Redding guilty of the lesser-included offense of manslaughter, requiring only recklessness. In light of the verdict, we conclude that any misstatement in closing arguments did not improperly cause the jury to infer an intent to kill.

Second, the trial court gave no oral curative instruction, but the charge correctly stated the law regarding the mens rea applicable to each offense submitted. Third, absent jury nullification, conviction on the manslaughter charge was almost certain, because the uncontroverted evidence showed that Redding

pointed a firearm at Holcomb and the charge instructed the jury to presume recklessness if Redding knowingly did so. Additionally, a seven year sentence is at the lower end of the range of punishment the jury considered. In short, although there was no curative instruction, the benign nature of the objected to statements, together with the strength of the State's manslaughter case, lead us to conclude that any error in overruling Redding's objections to the State's closing argument does not warrant reversal. *Mosley*, 983 S.W.2d at 259–60; *see also Schultze v. State*, 177 S.W.3d 26, 44–50 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (though prosecutor's argument improperly invoked matters outside record and no curative measures were taken, there was no harm given relatively minimal degree of misconduct and certainty of conviction).

We overrule appellant's third issue.

## Conclusion

We affirm the trial court's judgment.


Rebeca Huddle
Justice

Panel consists of Chief Justice Radack, Justice Bland, and Justice Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

17