

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| LEOPOLDO MORA, | § | No. 08-23-00115-CR |
| Appellant, | § | Appeal from the |
| v. | § | 226th Judicial District Court |
| THE STATE OF TEXAS, | § | of Bexar County, Texas |
| Appellee. | § | (TC# 2021CR9053) |

## MEMORANDUM OPINION

A jury found Appellant Leopoldo Mora guilty of first-degree murder in the shooting death of Kenneth Salazar. The jury also found that Appellant had previously been convicted of at least two of the three prior felony offenses alleged in the indictment's habitual offender enhancement paragraphs and sentenced Appellant to life in prison. In two issues on appeal, Appellant contends: (1) his due process rights were violated when a law enforcement officer expressed his opinion during the guilt-innocence phase that the shooting was not justified; and (2) his Fifth Amendment rights were violated by a comment the prosecutor made during the punishment phase of his trial that Appellant contends was an improper comment on his failure to testify at trial. For the reasons set forth below, we find no reversible error and affirm the trial court's judgment.[1]

---

[1] This case was transferred from the Fourth Court of Appeals pursuant to a Texas Supreme Court docket equalization

## A.   The guilt-innocence phase of the trial

The shooting in this case took place in broad daylight on the evening of June 13, 2021, at a motel in San Antonio where both Appellant and the victim had rented rooms. At trial, the State played video footage from the motel's security surveillance cameras, as narrated by several witnesses, including the motel's manager (Stacy Bahkta), another motel resident (Jasmine Lopez), and three law enforcement officers. The footage demonstrated that prior to the shooting, Appellant was standing in the doorway of his room, appearing to be "calm," and holding a cell phone while speaking with the victim, who stood outside. Following the conversation, the victim went to assist another individual working on a vehicle in the motel's parking lot, while Appellant went inside his room. Approximately a minute later, Appellant stepped into the open doorway of his room, holding a gun, and appearing to be "animated" or "agitated"; he then fired a single shot at the victim who was standing approximately ten feet away. The victim fell to the ground, suffering a gunshot wound to his upper abdomen. The evidence indicated Appellant got into the driver's seat of a car in the parking lot that had been driven into the lot by a woman, and he drove away.[2] The victim was transported to the hospital where surgery was performed, but he later died from the gunshot wound.

Jasmine Lopez—the only eyewitness to the shooting who testified at trial—recalled that shortly before the shooting, Appellant and the victim were conversing and the victim gave Appellant money; Lopez did not know why the money was exchanged. She testified that shortly

---

order. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of that court to the extent it might conflict with our own. *See* TEX. R. APP. P. 41.3.

[2] The woman that drove the car into the parking lot was the daughter of the motel's housekeeper who had frequently visited Appellant prior to the shooting. She was in the passenger seat when Appellant drove away. She was not charged as an accessory to the murder and did not testify at trial.

thereafter, while the victim was assisting another individual who was working on his vehicle, she heard a single gunshot and saw the victim fall to the ground. Lopez testified that she did not recall observing any animosity between Appellant and the victim prior to the shooting, and she could not say why the shooting took place. Neither Lopez nor any of the other witnesses who reviewed the motel's security footage and testified saw any displays of animosity between Appellant and the victim on the footage, and none observed the victim holding any weapons or making any aggressive movements toward Appellant prior to the shooting. However, the footage did not contain any audio; therefore, it was unclear whether any words were exchanged between the two.

San Antonio Police Officer Anthony Espinosa testified that when he arrived at the scene in response to a 911 call, he observed the victim on the ground surrounded by a group. At the scene, Officer Espinosa was told the shot was fired from the room Appellant had been renting, and Appellant had left the scene. The officer found a spent shell casing outside the door of Appellant's room, and after obtaining a search warrant, the police found a round of live ammunition inside the room as well as a cell phone linked to Appellant. The gun used in the shooting was never recovered.

At the close of the guilt-innocence phase of the trial, defense counsel did not deny that Appellant had shot the victim; instead, he argued that—although the video footage did not reveal what was said between the two prior to the shooting—"[s]omething was said . . . [s]omething happened" that prompted the shooting.

The jury found Appellant guilty of murder, as alleged in the indictment. The same jury was tasked with determining Appellant's sentence.

## B.  The punishment phase of the trial

During the punishment phase, defense counsel asserted a sudden-passion defense, again arguing that something must have happened to agitate Appellant after his initial, seemingly calm

3

encounter with the victim. Defense counsel again acknowledged that it was impossible to discern what, if anything, was said prior to the shooting. But, he argued, there must have been a confrontation between the victim and Appellant that triggered him, and asked the jury to consider "how upset a person has to be to shoot a person in broad daylight" with witnesses nearby. Over the State's objection that there was no evidence to support a sudden-passion defense, the trial court instructed the jury that if Appellant established by a preponderance of the evidence that he shot the victim "under the immediate influence of sudden passion arising from an adequate cause," he was to be sentenced in accordance with the statutory guidelines for second-degree murder. The jury rejected the defense.

The State also presented evidence that Appellant had three prior felony convictions (as alleged in the indictment's habitual offender enhancement paragraphs) for: bribery, intent to distribute a controlled substance, and felon in possession of a firearm.[3] The jury found that at least two of the enhancement paragraphs were true. After hearing testimony from the family members of both Appellant and the victim, the jury sentenced Appellant to life in prison. This appeal followed.

## THE ADMISSION OF OPINION TESTIMONY

In Issue One, Appellant contends his due process rights were violated when the State elicited the following testimony from Officer Espinosa during the guilt-innocence phase after the officer had finished reviewing footage of the shooting:

> **The Prosecutor:** "Based on everything that we saw in the video, as well as everything you developed during the course of your investigation upon talking to witnesses and all that, did you see any reason or learn of any reason for [Appellant] . . . to employ self-defense against Kenneth Salazar?"
>
> **Officer Espinosa**: "Absolutely not."

---

[3] Appellant pled "not true" to all three enhancement paragraphs.

**The Prosecutor:** "Was he justified, in everything that we've seen, in using deadly force against Kenneth Salazar?"

**Officer Espinosa:** "No."

According to Appellant, Officer Espinosa's testimony that the shooting was not justified constituted an improper legal conclusion regarding Appellant's sudden-passion defense; Officer Espinosa had "no facts to support his opinion"; and Officer Espinosa was "not qualified to provide such an opinion[.]" Appellant contends admitting that testimony violated the Texas Rules of Evidence governing the admission of opinion testimony and violated his due process rights, asserting he was denied the right to a fair trial. He further contends we must reverse his conviction, as admitting the testimony was harmful to his case under the standards set forth in Texas Rule of Appellate Procedure 44.2 regarding errors of a constitutional magnitude.[4] For the reasons set forth below, we disagree.

First, even if we were to assume Officer Espinosa's testimony was improperly admitted, Appellant has not cited any authority for the proposition that its admission violated his due process rights, nor are we aware of any.[5] To the contrary, it is well-established that the erroneous

---

[4] Rule 44.2(a) provides:

> If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a).

[5] Although Officer Espinosa's testimony came during the guilt-innocence phase of Appellant's trial, the jury was entitled to consider it in determining Appellant's sentence, as all evidence presented in the guilt-innocence phase of trial is automatically before the jury during the punishment phase. *See Buchanan v. State*, 911 S.W.2d 11, 13 (Tex. Crim. App. 1995) (en banc) (recognizing that evidence admitted at the guilt-innocence phase of a defendant's trial may be considered by the trier of fact in assessing punishment); s*ee also Wright v. State*, 212 S.W.3d 768, 776 (Tex. App.—Austin 2006, pet. ref'd) (recognizing that evidence from the guilt-innocence phase of a trial is automatically before the jury at the penalty stage, and a jury may consider all such evidence in determining a defendant's sentence). Accordingly, the improper admission of evidence during the guilt-innocence phase of a trial may have a prejudicial impact on the jury's sentencing decision. *See Hough v. State*, No. 03-01-00265-CR, 2002 WL 1025113, at *2 (Tex. App.—Austin May 23, 2002, pet. ref'd) (not designated for publication) (recognizing that because "evidence admitted at guilt/innocence may also affect the jury's deliberations on punishment," court would consider whether the trial court erred in admitting evidence during the guilt-innocence phase of defendant's trial and

admission of evidence, including opinion testimony, does not result in constitutional error. *See Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023) (concluding that any error in admitting law enforcement officer's testimony expressing his opinion on a complainant's credibility in a sexual assault case was of a nonconstitutional nature); *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (considering whether the erroneous admission of opinion testimony was harmful under the standard for nonconstitutional error). In fact, our sister court concluded that the admission of virtually identical testimony from a police officer—in which the officer opined that the defendant was not justified in using deadly force—was to be analyzed under the harmless error standard for nonconstitutional errors. *See Holmes v. State*, No. 14-22-00007-CR, 2023 WL 4883401, at *2–3 (Tex. App.—Houston [14th Dist.] Aug. 1, 2023, no pet.) (mem. op., not designated for publication); *see also Williams v. State*, No. 12-07-00428-CR, 2009 WL 4377196, at *3 (Tex. App.—Tyler Dec. 2, 2009, pet. ref'd) (mem. op, not designated for publication) (holding that the admission of officer's testimony stating he did not believe defendant's claim that he assaulted his victim while acting in defense of others was nonconstitutional error).

Moreover, to preserve error on appeal regarding the improper admission of evidence, "there must be a timely and specific objection to the complained-of evidence." *Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010) (citing TEX. R. APP. P. 33.1(a)(1)(A)). To be timely, a party must object either before the evidence is admitted or, if not possible, "as soon as the objectionable nature of the evidence [becomes] apparent and [move] to strike the evidence, that is, to have it removed from the body of evidence the jury is allowed to consider." *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) (en banc); *see also Daniel v. State*, Nos. 04-16-

---

whether it affected the jury's sentencing decision) (citing *Reyes v. State*, 994 S.W.2d 151, 153 (Tex. Crim. App. 1999) (en banc) (recognizing that "[t]he prejudicial impact of an error committed during guilt/innocence may extend into the punishment phase of a trial")).

00576-CR, 04-16-00577-CR, & 04-16-00578-CR, 2018 WL 2694665, at \*2 (Tex. App.—San Antonio June 6, 2018, pet. ref'd) (mem. op., not designated for publication) (recognizing same). Failing to object either before or at the time evidence is admitted, without a showing of a legitimate reason to justify the delay, waives the claim of error. *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995) (en banc). "If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived." *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997) (en banc).

Here, Appellant does not provide any legitimate reason for not timely objecting to Officer Espinosa's testimony. Nor does such a reason appear on the record. To the contrary, defense counsel objected on two other occasions when the prosecutor asked other law enforcement officers questions regarding whether they believed Appellant was justified in shooting the victim or whether they believed Appellant acted in self-defense based on their review of the motel's security footage.[6] Accordingly, we conclude that any error in the admission of Officer Espinosa's testimony was waived. Appellant's Issue One is overruled.

## THE PROSECUTOR'S ALLEGEDLY IMPROPER COMMENTS

In Issue Two, Appellant alleges that during the punishment phase, the prosecutor improperly commented on his failure to testify at trial in violation of his Fifth Amendment right to remain silent. Based on our review of the record, we conclude the prosecutor's comment did not violate Appellant's Fifth Amendment rights, but even if it did, any such violation was cured by the trial court's instruction to the jury.

---

[6] In both instances, the trial court sustained defense counsel's objections before the officers answered the prosecutor's questions.

### A. Standard of review and applicable law

A defendant has a Fifth Amendment right not to testify at both the guilt-innocence and punishment phases of his trial. *See Randolph v. State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011). And a prosecutor may not directly or indirectly comment on a defendant's failure to testify; doing so violates both the state and federal constitutions, as well as Texas statutory law. *Id.* (citing U.S. CONST. amend. V; *Griffin v. California*, 380 U.S. 609, 615 (1965); TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 38.08). "Commenting on an accused's failure to testify violates his state and federal constitutional privileges against self-incrimination." *Archie v. State*, 340 S.W.3d 734, 738 (Tex. Crim. App. 2011). "It is basic and fundamental constitutional and statutory law in this State that the failure of an accused to testify during his trial may not be the subject of direct or indirect comment by a prosecuting attorney during his final jury argument." *Garrett v. State*, 632 S.W.2d 350, 351 (Tex. Crim. App. [Panel Op.] 1982).

In determining whether a prosecutor's comments constitute an impermissible reference to an accused's failure to testify, the challenged language "must be viewed from the jury's standpoint and the implication that the comment referred to the defendant's failure to testify must be clear." *Bustamante*, 48 S.W.3d at 765. "It is not sufficient that the language might be construed as an implied or indirect allusion." *Id.* "A mere indirect or implied allusion to the accused's failure to testify does not violate appellant's rights." *Rodriguez v. State*, 446 S.W.3d 520, 537 (Tex. App.—San Antonio 2014, no pet.) (quoting *Patrick v. State*, 906 S.W.2d 481, 490–91 (Tex. Crim. App. 1995)). Instead, the "test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Bustamante*, 48 S.W.3d at 765. "In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such

8

character." *Id.* A remark that calls attention to the absence of evidence only the defendant can supply will result in reversal, but **"**if the language can reasonably be construed to refer to appellant's failure to produce evidence other than his own testimony, the comment is not improper." *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995) (en banc); *see also Meridyth v. State*, 163 S.W.3d 305, 311 (Tex. App.—El Paso 2005, no pet.) (prosecutor's comment that there was no evidence to support defendant's claim that the substance found in his hat was not cocaine or did not belong to him was not an improper comment on his failure to testify, where there were other witnesses who could have testified on the subject). Thus, "a prosecutor may comment on the defendant's failure to produce witnesses and evidence so long as the remark does not fault the defendant for exercising his right not to testify. *Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000); *see also Zambrano v. State*, 431 S.W.3d 162, 173 (Tex. App.—San Antonio 2014, no pet.) (recognizing same).

### C. Analysis

During the punishment phase when defense counsel argued Appellant shot his victim in sudden passion, the trial court instructed the jury that Appellant had the burden to establish his sudden-passion defense by a preponderance of evidence, defining sudden passion as a "passion directly caused by and arising out of provocation by the individual[.]" During closing arguments, the prosecutor called the jury's attention to the trial court's instruction then argued Appellant had not met his burden of showing he acted under the influence of sudden passion:

> One of the words to focus on when you go back and you take this back there with you and you read it is the word "provocation." Think back to the first half of the trial, the guilt/innocence phase, when we brought in all the witnesses. You heard all the evidence. There is not one single shred of evidence that the victim, Kenneth Salazar, provoked the defendant in any way. No evidence whatsoever presented by the State or the Defense.

Defense counsel objected to this argument on the ground that it violated Appellant's Fifth Amendment rights. The trial court sustained the objection then admonished the jury that it "will disregard that statement." Appellant did not request any additional instructions.

On appeal, Appellant continues to maintain that the prosecutor's argument constituted an improper comment on his failure to testify at trial and now contends, for the first time on appeal, that the trial court's instruction to disregard the prosecutor's argument was insufficient to cure the violation. We disagree with both arguments.

As the State points out, when viewed in context, the prosecutor's argument was in direct response to Appellant's defense that he shot the victim under the influence of sudden passion; the prosecutor encouraged the jury to look at the entire record to determine whether Appellant met his burden of establishing the defense, i.e., that he shot the victim as the result of provocation. The prosecutor did not expressly fault Appellant for not testifying as to provocation, nor was Appellant the only person who could have provided testimony on the subject. There were two other individuals in the motel's parking lot at the time of the shooting, and while only one of the witnesses (Jasmine Lopez) testified at trial, she expressly testified that she did not see any evidence of animosity between Appellant and the victim prior to the shooting. In addition, various witnesses who reviewed the motel's footage testified that they did not witness any animosity between Appellant and the victim prior to the shooting, nor did they observe the victim holding any weapons at the time. Accordingly, the prosecutor's comment was a fair summation of the evidence presented at trial on the issue of provocation, and we cannot say that the prosecutor's argument was of such a nature that the jury would have interpreted it as a comment on Appellant's failure to testify.

10

Moreover, even if we were to conclude that the prosecutor's argument was improper, the conviction would not automatically be reversed as a result. *See Crocker v. State*, 248 S.W.3d 299, 305 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (recognizing that "[a] violation of the prohibition against commenting on a defendant's silence at trial is not automatically reversible error") (citing *Madden v. State*, 799 S.W.2d 683, 699 n.28 (Tex. Crim. App. 1990) (en banc)). To the contrary, as Appellant recognizes, when a trial court promptly instructs the jury to disregard a prosecutor's improper comments, an appellate court will generally presume the instruction cured any harm or prejudicial effect that may have resulted from such comments. *See Dinkins*, 894 S.W.2d at 357; *see also Rougeau v. State*, 738 S.W.2d 651, 669 (Tex. Crim. App. 1987) (en banc) (holding that even if a comment could be construed as referring to a defendant's failure to testify, the prompt instruction given to the jury cured any harm). This is because "[t]he law generally presumes that instructions to disregard and other cautionary instructions will be duly obeyed by the jury." *Rodriguez v. State*, 446 S.W.3d 520, 537 (Tex. App.—San Antonio 2014, no pet.) (citing *Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011)); *see also Wesbrook v. State*, 29 S.W.3d 103, 115–16 (Tex. Crim. App. 2000) (en banc) (court will presume that the jury complied with the trial court's instruction to disregard a prosecutor's improper comments) (citing *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (en banc)).

An instruction to disregard a prosecutor's improper comment will only be viewed as inadequate if the comments were so "blatant" or "flagrant" that an instruction would not be able to cure the resulting harm. *See Dinkins*, 894 S.W.2d at 356; *see also Waldo v. State*, 746 S.W.2d 750, 753 (Tex. Crim. App. 1988) (en banc) (recognizing same); *Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994) (en banc) (only offensive or flagrant error warrants reversal when there has been an instruction to disregard); *Underwood v. State*, 176 S.W.3d 635, 640 (Tex. App.—

El Paso 2005, pet. ref'd) ("Only in the most blatant examples will an instruction to disregard fail to cure any error."). That is not the case here. And if it had been, the proper remedy would have been to request a mistrial, which was not done in this case. *See McGinn v. State*, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998) (en banc) (recognizing that if "the prejudice arising from an erroneous jury argument were incurable, a defendant would be required to request a mistrial to preserve error on appeal because a mistrial would be the appropriate remedy").

Here, Appellant argues the trial court's instruction to disregard the comment was "not enough," and a more specific instruction was warranted "explaining the prohibition against considering silence adversely." In support of his argument, Appellant cites our sister court's holding in *Hunter v. State*, 956 S.W.2d 143 (Tex. App.—Amarillo 1997, pet. ref'd). We do not, however, find *Hunter* to be helpful to Appellant's case. In *Hunter*, after the prosecutor made an improper comment on the defendant's failure to testify, the trial court instructed the jury to disregard the comment and further referred the jury "back to the charge." *Id.* at 144–146. In concluding the trial court's instruction cured any harm from the comment, the court found it significant that the jury charge contained a paragraph detailing the defendant's right to remain silent and informing the jury it could not adversely consider the defendant's failure to testify. *Id.* at 146. The court, however, did not hold that it was necessary to refer the jury back to the jury charge in every case to cure any harm stemming from the prosecutor's comment; to the contrary, the court recognized that a "boilerplate" instruction to disregard a prosecutor's comment is generally sufficient to cure all but the most blatant or egregious comments. *Id.* at 146 (citing *Bower v. State*, 769 S.W.2d 887, 906–907 (Tex. Crim. App. 1989) (en banc), *overruled on other grounds, Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991) (en banc) (holding that prosecutor's

comment on the defendant's failure to testify was not so prejudicial that it could not be cured by a general instruction to disregard the comment)).

In the present case, not only did the trial court provide the jury a "boilerplate" instruction to disregard the prosecutor's comment, but the court also expressly instructed the jury in its charge during both the guilt-innocence and punishment phases of Appellant's trial that it was not permitted to consider Appellant's failure to testify in its deliberations for "any purpose whatsoever." In sum, any harm possibly resulting from the prosecutor's comment was cured by the trial court's instruction. Appellant's Issue Two is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

LISA J. SOTO, Justice

January 18, 2024

Before Alley, C.J., Palafox, and Soto, JJ.

(Do Not Publish)

13